### MARTIN *vs.* WRIGHT'S ADMINISTRATORS.

Where a party renders services for another in the hope of a legacy, and in sole reliance upon the testator's generosity, *without any contract express or implied* that compensation shall be provided for him by will, and the party for whom the services were rendered dies without making such provision, no action lies ; but where, from the circumstances of the case, it is manifest that it was understood by both parties that compensation should be made by will, and none is made, an action lies to recover the value of such services.

THIS was an action of *assumpsit* for the board and lodging of *Alexander Wright*, the *intestate*, and for work, labor and services rendered for him. The intestate was the father of plaintiff's wife ; he died in 1830, an aged man, worth considerable property. About 15 years previous to his death, his wife died. After her death he continued to reside on his own farm, letting it out to tenants, whom he took into his house, and with whom he boarded ; but whenever he was sick or unwell, he went to the house of the plaintiff, his son-in-law,

where he remained from time to time until he recovered his
health, and then returned to his own house ; also, sometimes
when in health he resided with his son-in-law and daughter.
The plaintiff's residence was near that of the intestate, and
the plaintiff, his wife and family, rendered many services to
the intestate, in superintending his business, in providing for
his comfort, and in rendering him such personal services as
his old age and infirmities required. The intestate had seve-
ral children, but all who were in a condition to render him
much service, resided at a distance from him, except his
daughter, the wife of the plaintiff. The intestate was grati-
fied by the attentions bestowed upon him, and services ren-
dered for him by the plaintiff and his family, and expressed
his intentions to make compensation for the same, by making
provision in his will for the children of the plaintiff, over and
above the full share of their mother, to which she would be
entitled as one of his children. Accordingly, in 1827, he
made a will, by which he devised and bequeathed to the chil-
dren of the plaintiff about the sum of $1500, and then made
an equal distribution of the residue of his estate among his
children, giving to the plaintiff's wife her full share. In 1828,
he made a new will, substantially like that of 1827, with a
few alterations. In 1828 or 1829, *Joseph Wright*, a son of
the intestate, came from Canada, and went to reside on the
farm and in the house of the intestate, and after that time
until his death, the intestate resided with Joseph. In the
summer of 1830, the intestate took both his wills to an attor-
ney, and gave him instructions to draw up a new will, making
very considerable alterations in the disposition of his property,
but still making provision for the children of the plaintiff over
and above the full share of their mother, to the amount of
about $600. The new will was not drawn. On the *third* day
of *November*, 1830, *Joseph Wright*, the son of the intestate,
and with whom the intestate resided, went to the attorney
and stated that he was instructed by the intestate to call for
the wills, and the attorney accordingly delivered the wills to
him. On the *seventeenth* of the same month the intestate
died. The wills could not subsequently be found. *Joseph*

*Wright*, on being cited before the surrogate, stated that he delivered them to the intestate, and that on diligent search after his death they could not be found. *Joseph Wright* and one *D. Armstrong*, took out letters of administration on the estate of the intestate, and the plaintiff having failed to obtain that compensation for the services of himself and family, which the intestate had declared he intended to make by his will, commenced this suit. The cause was heard before *referees*, and in addition to the above facts, the plaintiff produced, on the hearing, a bond, bearing date in October, 1827, executed by himself to his children, reciting that *Alexander Wright* (the intestate) had that day made and published his last will and testament, whereby he had given a portion of his estate to the children of the plaintiff, and had appointed him the plaintiff, guardian of the said children during their minority, and specially directed him verbally as to the disposition of the property in case of the death of the said children, or either of them; and conditioned for the faithful performance of such trust. The execution of this bond was proved by the subscribing witness, who testified that he drew up the same at the instance, as he believed, of the intestate. There was also produced on the hearing a *receipt*, signed by the plaintiff, bearing date in *October*, 1827, by which the plaintiff acknowledged to have received of *Alexander Wright six cents*, in full of all demands or accounts from the beginning of the world to the date of the receipt, *provided his will lately made is carried into effect.* This receipt was handed over by the plaintiff to the administrators, after the death of the intestate, together with a bundle of other papers belonging to the intestate during his lifetime, and which had been left in the custody of the plaintiff. The defendants objected to its being received in evidence, without proof of its having been in the possession of the intestate; but the referees received it. The defendants proved the giving of a receipt by the plaintiff to the intestate, in *November*, 1827, similar to the receipt produced, but having no reference to a will made by the intestate. The referees made a *report* in favor of the plaintiff, for $435,75. The defendants moved to set aside the report.

*S. Stevens*, for the defendants.

*C. L. Allen*, for the plaintiff.

*By the Court*, SAVAGE, Ch. J. The facts disclosed by the case presented to us, on the motion to set aside the report, were sufficient to warrant the referees in finding that the services for which compensation is sought by this action were never intended, on either side, to be *gratuitous*.

A reference to some of the cases cited will show the circumstances under which services rendered shall be considered gratuitious. The case of *Osborn* v. *The governors of Guy's Hospital*, 2 *Strange*, 728, is often referred to on this point, though it was only a *nisi prius* decision. That was an action for services rendered to Mr. Guy, in his stock affairs. It appeared as if Osborn did not expect to be paid, but to be considered for it in the will of Guy; and the chief justice directed the jury, that if such was the case, they could not find for the plaintiff, though nothing was given him; that they should consider how it was understood by the parties at the time of doing the business, and that a man who expects to be made amends by a legacy cannot afterwards resort to his action. So, in the case of *Le Sage* v. *Coussmaker*, 1 *Esp. N. P. Cases* 189, Lord Kenyon said, that the law was well settled, that if the plaintiff had performed the services without any view to reward, but to legacy, that a demand for services could not be sustained; of that the jury were to judge. In the case of *Jacobson* v. *Executors of Le Grange*, 3 *Johns. Rep.* 199, the plaintiff lived with his uncle, the testator, at his request, eleven years; and the uncle said the plaintiff should be one of his heirs, and proposed to plaintiff's mother-in-law to give him £350 in land, as a compensation for his services. The plaintiff had never made any claim upon the testator. The jury found a verdict for the plaintiff. Van Ness, justice, in giving the opinion of the court, intimates that the plaintiff could not recover, if the services were rendered without any view to compensation other than such as the testator chose to make, by his last will and testament; but he also says, that the services having been performed for the benefit of the testator,

NEW YORK, with his knowledge and approbation, the law implies a promise
May, 1835. to pay unless it can be shown that payment was never intend-
Martin    ed. In *Patterson* v. *Patterson*, 13 *Johns. R.* 379, 80, the same
v.        learned judge says, that the plaintiff is entitled to a reward
Wright's Ad-
ministrators. for his services, unless they were to be performed gratuitously.
He cites the case I have above referred to, in *Strange* and
*Espinasse*, and intimates, that if the understanding of both
parties was that the services should be paid for by a provision
in the will, a right of action would accrue, provided no pro-
vision should be made. So, too, in *Little* v. *Dawson*, 4 *Binn*
111, the rule is said to be, that if the services were rendered
merely in expectation of a legacy, without any contract, ex-
press or implied, but relying solely on the testator's generosity,
no action can be maintained ; but in that case the testator
had said that he meant to provide for plaintiff as a child, which
was left as a matter of fact for the jury to decide whether the
services were gratuitous. These cases surely go far enough
in favor of the defendants. It was a question for the referees
in this case to decide whether the services were intended to be
paid for. They have found that compensation was expected
and intended at the time they were rendered, and the evi-
dence fully sustains their finding.

The circumstances under which the *receipt* was given are
sufficiently explained. If the receipt which was produced
was that which was executed in presence of the witness Cow-
en, then it is clear that the plaintiff intended to have the com-
pensation given by the will which had been executed but a
short time previous. Had it been absolute in its terms, it
must be understood as made in reference to that arrangement :
and if it was understood that a new arrangement had become
necessary, the plaintiff had no reason to expect that the pro-
vision for his children would be altered. It was certainly un-
derstood by both parties in this case that compenastion should
be made. The measure of compensation intended by the in-
testate was made known, and was satisfactory ; after that
the defendants should not be permitted to defend themselves
by the absence of any testamentary provision. The rule, I
apprehend, was never intended to apply to cases where it was

understood by both parties that compensation should be made; but merely to cases where services were rendered apparently gratuitously, under an expectation of a legacy.

Motion to set aside report of referees denied.