JOHN B. SCHWAB *vs.* MICHAEL PIERRO, Executor.

June 20, 1890.

**Recovery for Services Rendered in Contemplation of Devise—Evidence.**—S. worked for P., who was his uncle, without any express agreement for compensation, but with the mutual understanding of both that he should be compensated by adequate provisions in the will of M. The latter died without making such provision. *Held*, that S. might recover the value of such services as upon a *quantum meruit*.

The plaintiff having appealed to the district court for Hennepin county from the disallowance, by the probate court, of a claim presented by him against the estate of defendant's testator, the action was tried before *Young*, J., who directed a verdict of $1,250, with interest at 7 per cent. from August 1, 1884, for plaintiff. The defendant appeals from an order refusing a new trial.

*Penney & Rogers*, for appellant.

*Geo. C. Ripley*, *C. E. Brennan*, and *S. A. Booth*, for respondent.

VANDERBURGH, J.   The plaintiff seeks to enforce a claim against the estate of Michael Pierro for services rendered him in his lifetime. The defence relied on is that the plaintiff was a nephew of the deceased, and was a member of his family while such services were rendered, and that they were so rendered without any promise or agreement, express or implied, on the part of the deceased, to pay for the same, and without any expectation on plaintiff's part to receive any compensation therefor.   The deceased was a bachelor, and owned a hotel in Minneapolis.   His only relations were plaintiff's mother, who was his sister, the plaintiff, and the defendant, executor and principal legatee, who was his cousin.   About 1877, plaintiff, then a boy about 13 or 14 years of age, came with his mother, a widow, to plaintiff's house, which was then rented and managed by one Brandenburgh as a hotel and saloon, and she went to work there for wages, and he "did chores for Brandenburgh," and the deceased boarded at the same place.   This state of things continued for several years till the spring of 1882, when the plaintiff, then about 18 years of age, left, and went to work for wages at Chaska.   In May of the same year Brandenburgh surrendered possession of the hotel to the deceased, who thereupon became proprietor, and plaintiff was notified by his mother, who remained there, to return, because he was needed to take charge of the business for his uncle.   He thereupon came back, and for two years and upwards took charge of the hotel and saloon, bought the supplies, paid the bills, tended bar, and had the general care and management of the business.   The deceased, however, was about the premises, and received the avails and profits of the business.   At the expiration of two years and three months the plaintiff succeeded to the business, having bought the same of his uncle, but not the hotel property.   In the mean time both plaintiff and his mother had continued to work for and assist the deceased in carrying on the hotel business.   After that he paid rent to the deceased for the use of the hotel.   What compensation his mother received during this time does not appear.   It is clear enough from the evidence that the plaintiff did not understand that he was to receive no compensation for his services other than as a member of the family of the deceased, or that his board and living

expenses were adequate compensation, for it is admitted that his services were reasonably worth $50 per month. Prior to the time he left for Chaska, he was living with his mother at Brandenburgh's hotel, and, though the deceased boarded there, the presumption is that he was supported by his mother; and, though there is evidence tending to show that both before and after his return from Chaska his uncle had made some expenditures for him for necessaries, there is hardly enough to show that he had assumed the responsibility of plaintiff's support, or that in consideration thereof the latter was rendering the services in question. He had never claimed plaintiff's wages before, and when the latter was sent for to take charge of the hotel it could hardly be presumed that either party expected or understood that he was not to receive adequate compensation of some sort. And, though there was no express agreement or definite understanding between them, it is rendered indisputably clear from the evidence what the apparent intention and purpose of the deceased was, as expressed in the presence of the plaintiff and to his friends, from time to time, and what was plaintiff's expectation and understanding in the premises,—and that was that he was eventually to have the hotel property as the devisee of his uncle. There is hardly room for a difference of opinion that such was the mutual understanding of the parties when the services were rendered. And the repeated declarations of the deceased, his general course of conduct towards the plaintiff, and the situation and relations of the parties, were sufficient to justify the trust and confidence reposed by the plaintiff in the assurances of the deceased that he was to be his sole heir; and this fact affords a sufficient explanation of his conduct in not presenting any claim for his services, or demanding an accounting and settlement with his uncle before he died, for no claim for compensation was to be made in his lifetime.

The plaintiff could not, under the statute, give testimony in reference to what may have passed directly between him and the deceased on the subject; but, while there was no express agreement proved, there was ample evidence of the mutual understanding of the parties in reference to the intentions of the deceased, and the character of

the compensation which the plaintiff was induced to believe he would finally receive. The plaintiff was entitled to be paid for his services unless they were to be performed gratuitously; but the evidence, we think, satisfactorily shows the nature of the compensation contemplated by the parties, and rebuts any presumption which might arise from the relations of the parties that they were not to be rewarded. It is not enough that the services should be rendered merely in the hope or expectation of a legacy, and relying solely on the generosity of the testator. But the rule appears to be well established that where it is mutually understood that services are not to be rendered gratuitously, but to be compensated for in a particular way, then the law will permit a recovery of the reasonable value of such services, if the particular compensation contemplated is not made. *Martin* v. *Wright*, 13 Wend. 460; *McRae* v. *McRae*, 3 Bradf. Sur. 199, 204; *Patterson* v. *Patterson*, 13 John. 379; *Quackenbush* v. *Ehle*, 5 Barb. 469; *Robinson* v. *Raynor*, 28 N. Y. 494.

It was error to allow evidence to be introduced of the value of the estate, as this might improperly influence the estimate of the damages. *Erben* v. *Lorillard*, 19 N. Y. 299. But it was without prejudice in this case, for the reason that the value of plaintiff's services was admitted.

The case rests solely upon the evidence introduced by the plaintiff. The defendant contends that it ought to have been submitted to the jury for them to pass upon, and that the court erred in directing a verdict. But the plaintiff seems to have made a strong case. It is supported by the testimony of numerous witnesses showing the intention of the testator, as repeatedly expressed by him, and the mutual understanding of the parties, that the plaintiff was to have the property. There was no conflict, and there can hardly be said to be any reasonable doubt, as to the inferences to be drawn from the testimony, by which we think the facts as above stated are satisfactorily proved. *Robinson* v. *Raynor*, 28 N. Y. 494, 499.

Order affirmed.