HERMENIGILE MESSIER *vs.* CORDELIA C. MESSIER.

APRIL 11, 1912.

PRESENT: Johnson, Parkhurst, and Sweetland, JJ.

*(1)  Res Adjudicata.  Issues.*

Plaintiff brought a suit in equity against his mother, among other defendants, to set aside a deed from the mother and for specific performance of an alleged agreement to make a will and it was decided that the evidence did not show a contract to make a will or a contract not to revoke the will or conduct estopping her from revoking the same, and bill was dismissed.  Thereafter, plaintiff brought suit against his mother, claiming compensation for services, board and expenditures, claiming that the services were rendered because of an agreement that he should be compensated by will.

*Held*, that the issues were not the same, and the issue in the latter suit was not res adjudicata in the equity suit.

*(2)  Contracts For Work and Labor.  Evidence.*

*Held*, further, that in the action in indebitatus assumpsit, the burden being on plaintiff to show that the services were not rendered voluntarily and gratuitously, and were not understood by defendant to be so rendered, although

the contention in the equity suit had been decided against him, declarations of defendant were properly admissible, even if they had some tendency to show a contract to make a will and an agreement not to revoke the same, for they tended to show that defendant understood that in some way plaintiff was to be compensated.

*(3) Work and Labor. Contracts.*

A man who expects to be paid for his services by a legacy cannot afterwards resort to his action for the value of such services, if only a mere expectation on his part is shown.

*(4) Appeal and Error.*

The court cannot pass upon the exclusion of a deposition, where the deposition does not appear as an exhibit and the court is not informed as to its contents.

*(5) Work and Labor. Evidence.*

In an action by a son against his mother for services, the admission of the bill of complaint and the opinion of the court thereon, in an equity case between the parties wherein the court decided that the mother did not agree to make a will in favor of the son, was not prejudicial to plaintiff, since the son could recover in the suit for services only because his contention in the equity suit was decided against him.

*(6) Work and Labor. Compensation by Will.*

Where a son gave board or services or paid out moneys for his mother with her consent with the expectation of being paid therefor by will, and the mother expected to pay for the same by will, then he can recover therefor in an action of assumpsit what is reasonable, where the mother has by conveyance of her property put it out of her power to compensate him by will.

*(7) Work and Labor. Parent and Child.*

In an action by a son against his mother for services, the amount of services rendered would affect the amount of recovery, but not the right of recovery, therefore a request to charge that a small amount of services or small amount of money expended might be considered a gift, but it might be highly improbable that a poor man would give or intend to give a large amount for many years, when other children were contributing nothing, was properly refused.

*(8) Work and Labor. Contracts.*

In an action by a son against his mother for services rendered a request to charge based solely on the expectation of compensation, was properly refused.

*(9) Work and Labor. Statute of Limitations.*

Where a son expected to receive compensation for his services by will, and his mother expected to pay him by will and allowed him to think he would be so paid, the statute of limitations did not commence to run until in some way the mother gave him notice that he would not be so paid.

*(10) Mutual Accounts. Statute of Limitations.*

In mutual accounts and dealings an obligation arises not from each item, but from and for the balance only. Hence the statute of limitations begins to run only from the date of the last item.

*(11)   Mutual Accounts.   Work and Labor.   Statute of Limitations.*

Upon a running account between a son and his mother, based on services rendered the mother, on a promise to pay the son by will, he would have no right of action in the absence of a repudiation of the agreement, until it had been fully performed, but where it has been repudiated, by act of the mother in the conveyance of her property, the right of action upon the balance representing the debt between them, thereupon accrued and the statute of limitations began to run upon that date.

ASSUMPSIT.   Heard on exceptions of both parties.   Certain of exceptions of plaintiff. sustained.   Defendant's exceptions overruled.

JOHNSON, J.   This is an action of *indebitatus assumpsit* for work and labor brought by Hermenigile Messier of Warwick, in Kent County, against his mother, Cordelia C. Messier, of said Warwick.   The action was brought July 10, 1909.

There is no dispute that for several years he had collected the rents from her property and paid therefrom the charges against the property and that she made a will in his favor in 1891 which she revoked in 1907 after leaving her son's home and after going to the house of her daughter, Cordelia E. Rainville.

In 1907 a suit in equity was brought by Hermenigile Messier, this plaintiff, against his mother, the defendant, and Cordelia E. Rainville, and her husband, Stanislas Rainville, to set aside a deed from Mrs. Messier to Mrs. Rainville and a mortgage back, and for a reconveyance, and to compel specific performance of an alleged agreement ' to make a will, and for an injunction.   In that suit (*Messier* v. *Rainville, et al.* 30 R. I. 161) it was decided that the evidence did not show a contract to make a will; that it did not show a contract not to revoke the will; and that it did not show conduct on the part of the respondent Messier that would estop her from revoking the same.   A final decree dismissing the bill was entered in that case.

The plaintiff in this action claims compensation for services, board, and expenditures for a period extending from

January 12, 1891, to November 22, 1907. He testified that he performed these services because of an agreement that he should be compensated by will.

The defendant pleaded the general issue and also the statute of limitations. The case was tried before a justice of the Superior Court and a jury, January 25, 26 and 27, 1911.

The jury returned a verdict for the plaintiff for $1,069.57. Both plaintiff and defendant thereupon brought their bills of exceptions to this court.

The defendant offered in evidence *inter alia* the record in the equity suit and contended in a motion to direct a verdict for the defendant that the issues sought to be decided in this case had been the subject of an adjudication in the former suit, and also that a man who expects to be made amends by a legacy cannot afterwards resort to his action. This motion was denied, and the defendant duly excepted. This is the defendant's sole exception.

In *Almy* v. *Daniels*, 15 R. I. 312, cited by defendant, the plaintiffs introduced in evidence the plat and papers in an equity suit between the same parties respecting the same strip of land. This court, p. 313, said: "The plaintiffs contended, at the time of the offering of said evidence, that this deed from Almy to Mead had already been judicially construed by the court in the equity suit referred to, and that the question was therefore *res adjudicata*. The defendant contended, however, that the construction put upon said deed in said case was mere *obiter dictum*. Upon a careful examination of that case, we find that the title of the plaintiffs' testator to the land in question was directly involved therein. The defendant then claimed precisely what he now claims, viz., that by this deed the plaintiffs' testator 'conveyed all his interest in the gangway or street to Mead, which by sundry mesne conveyances has come to him.'"
. . . "The opinion shows that the question as to the proper construction of said deed was 'raised and fully argued in the case,' and that thereupon the court decided that this

strip of land was held by the plaintiffs' testator and the defendant as tenants in common. And although it was not strictly necessary for the court to pass upon this question, as the bill was dismissed on the ground that no contract was proved for a private way over the strip of land in dispute as alleged in the bill, yet, as the point was distinctly raised by the pleadings, fully argued by counsel, and thus deliberately passed upon by the court, we think the construction put upon the deed must be held to be *res adjudicata.*"

(1) In that case the question of title to the land in dispute had been decided in the former case and this was the very point at issue in the case then before the court. The defendant's counsel contend that the issues sought to be decided in the case at bar had been the subject of an adjudication in the former suit. In the equity suit it was decided that the evidence did not show a contract to make a will; that it did not show a contract not to revoke the will; that it did not show a conduct on the part of the respondent that would estop her from revoking the same. In the case at bar the plaintiff is not seeking to have a will, made pursuant to an alleged contract, declared irrevocable, but is suing for compensation for services and expenditures for a period extending from January 12, 1891, to November 22, 1907. The issues are not the same. It cannot be said that the issue sought to be decided in the case at bar was the subject of an adjudication by the court in the equity suit, as the issue in the case at bar was not before the court in the equity suit.

This question has quite frequently been before the courts in other jurisdictions. The case of *James* v. *Cummings*, 132 Mass. 78, though it does not involve an agreement for compensation by will, is in principle entirely in point on this question. The Court, Devens, J., said: "This is an action for board of Cummings and his wife, during her lifetime, and for labor and services upon his land. The land upon which the alleged service was rendered had been purchased with the money of Cummings, and the deed had been put by James in the name of his wife, who was the daughter

of Cummings. Before the date of the present suit, a bill in
equity had been brought by Cummings against James and
his wife, by which he sought to have the title thereto placed
in his own name. To this bill James and his wife had
answered that the land had been purchased by Cummings'
money, but that the deed had been made to the wife of
James in consideration of support which had been furnished
to Cummings and his wife, and in expectation of further
continued support. Upon the trial of the equity cause, it
was found that Cummings never intended to have the land
conveyed to the wife of James, or to deprive himself of his
legal possession and enjoyment thereof; and a decree was
entered that the wife of James should convey the land to
Cummings, and that James should join in the deed. This
decree has been complied with. At the trial of the case now
before us, the court, at the request of Cummings, ruled that
the decree was conclusive as to his title; that the deed was
not put in the name of the wife of James by his consent; and
that the land was not the land of Mrs. James burdened with a
trust for his support. Cummings now objects that certain
evidence was admitted tending to show that board and
lodging were furnished in consideration of the deed, and that
the equity case decided between the parties made such
evidence inadmissible.

"Evidence which may fail to prove one proposition may be
invoked to prove another, even if the first proposition is con-
clusively decided against the party seeking to maintain it.
It was settled between these parties that the land was the
property of Cummings, but declarations admitted as part of
his conversation or of conversation in his presence which was
otherwise relevant were properly so admitted, even if they
had some tendency to show a contract different from that
here declared on, and which James, in view of the equity
suit, could not here claim ever to have existed. James was
seeking to establish that Cummings and his wife boarded
with him on the land which belonged to Cummings (although
then in the name of Mrs. James), and that work and labor

were done by him on the land on a contract express or
implied that the board and labor were to be paid for. This
was a different inquiry from that presented by the equity suit.
It was essential to the case of James that he should show that
the board and services were not gratuitous, and were not
understood to be so or treated as such by Cummings. Upon
this issue, the conduct of Cummings and his wife, the manner
in which the parties lived and worked together, and the
declarations of Cummings, were all competent. Even if
some of them tended to establish that the land was actually
the property of Mrs. James, which had been decided against
James, these were admitted as part of a conversation other-
wise relevant, and further tended to show that Cummings
understood that board and services were not furnished him
gratuitously, but that in some form or at some time James
was to be compensated therefor. It may well have been
that the jury were justified in believing them to this extent,
while they disregarded them, as they were instructed and
were bound to do, so far as they afforded any proof that the
land was actually the property of Mrs. James."

The principle involved is stated in 2 Greenl. Ev. § 104,
that where the contract, though not fully performed, has
been rescinded by some act on the part of the defendant, the
plaintiff may resort to the common counts to recover for
what he had done under the special agreement. Whether
the contract has been rescinded by the act of the defendant
or is one not enforceable, as within the statute of frauds,
for example, the same principle applies.

In *Schempp* v. *Beardsley*, 83 Conn. 34, there was an oral
agreement to live with and support an owner of real and
personal property during her lifetime, in consideration of
receiving all her property at her death. The agreement
being in part for the conveyance of real estate, it was held
that the plaintiffs could support no action upon it. The
court, Baldwin, C. J., pp. 37, 38, said: "The contract
never was repudiated by Miss Coffey during her lifetime.
It could not be, so as to affect their rights without notice to

the Schempps. The execution of her will in favor of others she never made known to them; nor would its execution have prevented her from subsequently doing what her agreement with them required. No right of action, therefore, of any kind, by the Schempps against Miss Coffey existed during her lifetime. Upon her death a right of action arose, not for damages measured by the value of the estate which she had left, because no action on the special contract could be maintained, but for damages measured by the value of the support furnished." In *Ellis* v. *Cary*, 74 Wis. 176, the court, pp. 183–189, says: "The agreement alleged in the complaint or claim of *Mrs. Ellis*, and found by the court to have been made, is, in substance, that if Mrs. Ellis would keep the house of the deceased and take care of him during the residue of his life, he would devise and bequeath to her all his real and personal property as compensation for such services. The agreement was oral. When it was made, and when John Gorman died, his estate consisted of both real and personal property, but the most of it was real estate." . . . "The agreement thus established is in part for a devise of land, and the same was not evidenced by any writing signed by the testator. It is therefore within the statute of frauds, R. S. p. 654, Sec. 2304. The fact that it included personal as well as real estate does not take it out of the statute, even as to such personal estate. Such a contract is indivisible, and, failing in part, the whole fails." . . . "It is a verity in the case that the deceased expressly agreed by parol to pay *Mrs. Ellis* for her services, and that upon the faith thereof she entered upon such service, and continued therein until he died, thus fully performing her part of the agreement. Were this all, the agreement could be a valid express contract on his part to pay for such services what they were reasonably worth. But such agreement contains another provision, which renders it void as a contract. It would be a severe rule to hold that, merely because such provision was included in the parol contract, no doubt through the ignorance of both parties of the effect of it,

*Mrs. Ellis* should lose all compensation for eight years of most faithful service, when she stipulated in advance for such compensation and the deceased agreed in advance (no doubt in perfect good faith) to compensate her therefor. After much investigation and thought we have reached the conclusion that the case is not governed by any such harsh rule." . . . " Owing to the relationship between Mrs. Ellis and her step-father, and the fact that she was a member of his family, the legal presumption, in the absence of proof to the contrary, is that her services were rendered gratuitously. The burden is therefore upon her to show that they were not so rendered, but that she was to be remunerated therefor. To meet this obligation she proved the express parol agreement for compensation. True, such agreement is void as a contract for the reasons stated, and hence cannot be enforced specifically, nor constitute the basis of an action for damages. But is there any just or sound reason why the express promise or stipulation therein to remunerate her should not still be operative, not as a contract, but to rebut the presumption that Mrs. Ellis rendered the services in question gratuitously?

"True, this court has said in effect, in several cases, that the express promise or agreement required by the rule means a valid express contract. But in each of these cases a valid express contract was asserted and relied upon to rebut the presumption of gratuitous service. Hence, as applied to and limited by the facts of those cases, the rule thus laid down was strictly accurate. Yet it does not necessarily conflict with the rule above suggested, that the presumption of gratuitous service may be rebutted by proof of an express promise or agreement to remunerate therefor, which by reason of some provision contained in it is void as a contract. Those cases hold that where a valid express contract is relied on to rebut the legal presumption of gratuitous service, such a contract must be proved. They do not necessarily hold, and it would probably be mere *obiter* did they assume to hold, that such presumption is not also rebutted by proof

of an express promise or agreement to remunerate, which for some reason is void as a contract. There may be a promise or agreement to do a particular thing, even though it falls short of being a valid contract. An examination of the cases above referred to will show that none of them present the question of the effect of a promise to remunerate, which cannot, under the statute of frauds, be enforced as a contract." . . . "It was further contended by counsel for the defendant, in his very learned and able argument, that the parol contract to devise land for the services of *Mrs. Ellis* being void, it is an absolute nullity and cannot be considered, for any purpose whatever, as ever having had an existence. Cases are not wanting containing language which seems to support this contention. But the rule is too strongly stated. It is entirely accurate to say that a void contract cannot be enforced. No attempt is here made to enforce one; but the fact is that, in the very large class of cases in which recoveries for money paid or for services rendered under void contracts have been upheld, it was competent and essential in each case to prove the contract and its invalidity before there could be any recovery. If the void contract contains no express stipulation to repay the money or to compensate for the services, the plaintiff recovers, in a proper case, on the implied promise to do so. If there is a stipulation in the void contract to repay the money advanced on it, or, as in this case, to compensate for the services rendered on the faith of it, the recovery is upon the express promise or agreement.

"We must hold, therefore, that a person rendering services for another which would otherwise be gratuitous (as in the present case) may recover therefor on proof that they were rendered pursuant to an express promise or agreement by the one receiving the services to compensate therefor, even though such promise or agreement contains provisions which bring it within the statute of frauds and prevent its enforcement as a contract."

The same question was involved in *Wallace* v. *Long,* 105 Ind. 522. The circumstances were very similar to those in

*Ellis* v. *Cary, supra.* After holding that the agreement there in question was within the statute of frauds, and could neither be specifically performed nor become the foundation of an action for damages, the court says: "It does however, serve to rebut any presumption which might otherwise have obtained, that the services rendered were to have been gratuitously performed, or that they were performed under the mere expectancy that the intestate would leave the plaintiff's ward a legacy. She is therefore entitled to recover the value of her services."

(2) Although the plaintiff in the case at bar testifies that he performed the services because of an agreement that he should be compensated by will, that does not render his evidence of no effect. In this case, as was said in *James* v. *Cummings, supra,* evidence which had failed to prove the contention of the complainant in the equity suit could be invoked to prove his contention in his suit for services, although the contention in the equity suit had been conclusively decided against him. And the declarations of the defendant were properly admissible, even if they had some tendency to show a contract to make a will and an agreement not to revoke the same, although, in view of the equity suit, the plaintiff could not here claim that such a contract ever existed. The plaintiff was seeking here to prove that the work and labor done and the expenditures made, were so done and made upon a contract express or implied that he was to be compensated therefor. The burden was on him to show that the services were not rendered voluntarily and gratuitously, and that they were not understood by the defendant to be so rendered. Upon this issue the conduct of the defendant, the manner in which the parties lived together, and the declarations of the defendant were all competent. If some of such declarations tended to show a contract to make a will in the plaintiff's favor, these were parts of conversations otherwise relevant, and further, tended to show that the defendant understood that the services were not rendered gratuitously, but that in some way

the plaintiff was to be compensated therefor. The jury would be justified in believing them to this extent, although bound to disregard them under the instructions of the court, so far as they afforded any proof of the right of the plaintiff to have an irrevocable will established in his favor. Indeed, he could recover in this suit only because his contention in the equity suit was decided against him. Clearly if he had succeeded in that suit he could not recover in this. See, also,. *Collier* v. *Rutledge,* 136 N. Y. 621; *Reynolds* v. *Robinson,* 64 N. Y. 589; *Martin* v. *Wright's Admr.* 13 Wend. 460; *Robinson* v. *Raynor,* 28 N. Y. 494; *Schwab* v. *Pierro,* 43 Minn. 520; *Taylor* v. *Wood,* 72 Tenn. 504; *Nimmo* v. *Walker,* 14 La. Ann. 581.

(3)    The defendant's contention that a "man who expects to be made amends by a legacy cannot afterwards resort to his action," would be good if only a mere expectation were shown, and that is what was decided in *Osborn* v. *Guy's Hospital,* 2 Strange, 728, cited by counsel for the defendant, where the court said: "The plaintiff brought a *quantum meruit pro opere et labore* in transacting Mr. Guy's stock affairs in the year 1720. It appeared he was no broker, but a. friend, and it looked strongly, as if he did not expect to be paid, but to be considered for it in his will. And the chief justice directed the jury, that if that was the case, they could not find for the plaintiff, though nothing was given him by the will; for they should consider how it was understood by the parties at the time of doing the business, and a man who expects to be made amends by a legacy, can not afterwards resort to his action."

The defendant's exception is overruled.

(4)    The plaintiff's first exception is to the exclusion of the deposition of Father Gabourz, p. 94 of transcript. As, however, the deposition spoken of does not appear as an exhibit and we are not informed as to its contents, we are not able to say that the Judge's exclusion of it was. error.

The second exception is to the exclusion of question 156, p. 122, of the transcript: "Did you tell anybody to burn

up that will?" The third exception is to the exclusion of question 157, p. 122 of the transcript: "Was the deed made to your daughter of the property before the will was burned?" These questions were not relevant to the issue in the case, and there was no error in their exclusion.

(5)     Plaintiff's exceptions 4 and 5 are to the admission respectively of the bill of complaint in *Hermenigile Messier* v. *Cordelia E. Rainville, et al.* in the Superior Court, Kent County, No. 70, and the opinion of the Supreme Court in said case. The plaintiff was not prejudiced by the admission of either the bill of complaint or the opinion. As we have said *supra* he could recover in this suit only because his contention in the equity suit was decided against him. Clearly if he had succeeded in that suit he could not recover in this.

The plaintiff excepted to refusals to charge as follows: Exception 6 to refusal of request No. 1, viz.: "If the plaintiff gave board or services or paid out money for his mother with her consent on her promise to give him her property at her death as compensation, then he can recover a reasonable compensation for such board, services and can recover such moneys paid out by him." This request is faulty. He could not recover upon his testimony unless the defendant had done something to prevent his receiving compensation by will. This should have been included in order to make the request proper. As framed the request was properly refused.

(6)     Exception 7 to refusal of request No. 2, viz.: "If the plaintiff gave board or services or paid out moneys for his mother with her consent with the expectation of being paid therefor by will and his mother expected to pay for the same by will, then he can recover therefor in this action, what is reasonable, as she has by conveyance to her daughter put it out of her power to compensate him by will." We think this request should have been granted.

Exception 8 to the refusal of request No. 3, viz.: "In determining whether the plaintiff expected compensation,

the jury have a right to consider all the facts appearing in the evidence, the amount of money expended, and services rendered for, and board given to the mother, if any." This request was fully covered by the charge. The court was not required to repeat the instruction and the request was properly refused.

(7) Exception 9 to refusal of request No. 4, viz.: "A small amount of services rendered, or board given for a short time, or small amount of money expended for a mother might be considered a gift, whereas it might be highly improbable that a poor man would give or intend to give a large amount for many years, in these particulars and when other sons and daughters of the mother were contributing nothing."

While the language of this request would be proper enough in an argument to the jury, it embodies no principle of law which the plaintiff was entitled to have stated to the jury by the court. The amount of service rendered would affect the amount of the recovery, but not the right of recovery. The request was properly refused.

Exception 10 to refusal of request No. 5, viz.: "Whatever the circumstances were, whether any contract was made or not between the parties, the question is, whether or not (8) it is probable that the plaintiff gave these services, paid and expended all this money, without expectation of being paid in some way. If he did so expect compensation and such is the probable inference from the evidence, he is entitled to recover."

This request was based entirely upon the expectation of the plaintiff, and was properly refused.

Exception 11 to refusal of request No. 6, viz.: "Under the plaintiff's testimony in this case he could not bring any action of any kind until his mother, the defendant, had refused to give him her property by will or had made it impossible so to do." If the request had read "support" instead of "bring" an action, we think it would have stated the law correctly. As however it was not technically correct there was no error in its refusal.

Exception 12 to refusal of request unnumbered, p. 148, viz.: "If the plaintiff expected to receive compensation for the charges in his bill of items by will, and his mother expected to pay him by will and allowed him to think he would be so paid, then the statute of limitations does not commence to run until in some way she gave him notice that he would not be so paid." We think the plaintiff was entitled to this instruction.

Exception 13, to the charge of the court to the jury, viz.: "That the decision of the Supreme Court in the equity suit of *Hermenigile Messier* v. *Cordelia E. Rainville, et al.*, was conclusive that there was no contract to make a will and that there was nothing which could prevent her from revoking it, and that decision settled that question for that case, and this case, which ruling appears in the charge of the Court on p. 138 of said transcript, and the exception of the plaintiff thereto on p. 149 of said transcript." The instruction to which the exception was taken is included in an instruction on pp. 137–140, as follows: "There is much in this case of the kind of testimony which perhaps may tend to confuse the jury and it is my duty in instructing you as to the law to try to eliminate what I conceive to have no relation to the case or to be already settled as between these parties.

"For instance, considerable testimony has been offered here perhaps tending to show that there was, some twenty years ago, an agreement between the mother and the son, on her part to make a will and on his part in consideration thereof to do certain things for her. Now, that question has been tried out in another case between the same parties, as to whether or not there was such a contract and the court, the highest court of this state has decided that there was no contract to make a will and that there was no contract not to (revoke ?) it and there was nothing which would prevent her from revoking it, and that settled that question between those parties for that case and this case, and therefore, Gentlemen, you do not have to consider at all whether or not there was a contract made; you cannot consider, it is

not your province to consider. The Supreme Court has said there was no contract and, therefore, that may be dismissed in so far as that particular point is concerned. I do not mean to say you may not consider all that has been said in relation to that about which I shall charge you presently.

"This case, as I have already said, is one in which the plaintiff claims that there was an implied promise to pay him. I have stated the law as it would generally be between strangers, but as between members of a family or between a son and his mother, services rendered by way of support or care do not imply any promise to pay. The presumption is that they were voluntary. If either one of you gentlemen should have his mother living with him, living in his own house, and there were no specific arrangement about it and any question should arise thereafter, the presumption would be that whatever you did for your mother was intended as a gift, was voluntary. That is the presumption of law, and, therefore, in this case, when this son sues his mother he must overcome that presumption of law by showing circumstances which showed that he is entitled, from the relation of the parties and the circumstances, that he had a reasonable and proper expectation of being compensated for his services. If he shows that was the fact, the circumstances were such, that the dealings between the son and mother were such, that he had a proper and reasonable expectation of being paid for his services, then he would satisfy the requirement of the law and so it was taken out of the nature of being voluntary services and entitled him to recover, to obtain compensation; and that is the question, Gentlemen, for you to determine in this case. Are the circumstances, the dealings of the mother and son such as to show that he had a reasonable expectation of being compensated for his services?

"Now, in considering that question, whether or not the parties made an agreement in this will and talk in relation to it, you might consider all the testimony in relation to that will and what is said by the plaintiff as to whether or

not it indicates an expectation, a reasonable expectation on his part to be paid for his services. For instance, it might appear that there was no contract made to make a will and no contract made on his part to support her. If you are passing upon that fact and reach that conclusion that he didn't comply with the law in doing that, yet the question would remain whether their dealings and intentions were manifest although not affirmatively carried out by the contract. Were their intentions such that he had a fair, reasonable expectation from their dealings that he was going to be paid for it, and you should consider the testimony in that light. You should consider that testimony and all the testimony in the case which shows whether or not these services were gratuitous or were rendered under such circumstances as to entitle him to compensation."

The exception is without merit. The law upon this question has been considered by us upon defendant's exception to the denial of her motion for the direction of a verdict in her favor upon the ground that the issues sought to be decided in this case had been the subject of an adjudication in the former suit, and also that a man who expects to be made amends by a legacy cannot afterwards resort to his action. By the instruction which we have quoted, taken as a whole, the plaintiff was not aggrieved.

Exception 14. "To the charge of the court to the jury, appearing on p. 142 of said transcript, that everything on the claim of the plaintiff prior to July 10, 1903, was barred by the statute of limitations—the plaintiff's exception thereto appearing on p. 149 of said transcript."

There was testimony tending to show an understanding between the plaintiff and the defendant that he would live with and support her and take care of her property during her life and that she was to leave her property to him by will at her death. If such an understanding was shown and it was also shown that he had performed his part of the agreement, until excused from further performance by the act of the defendant, which facts it was within the province of the

jury to find, would his claim be barred as to all services rendered by him prior to six years before the commencement of the suit? In the seventh paragraph of the defendant's answer in the equity suit, which was put in evidence, the defendant says: "This respondent denies the allegations in paragraph seventh of the complainant's bill; and the respondent avers that this complainant was permitted during said time to act as her agent in leasing said property and collecting said rents, and that said complainant was permitted to retain *for his own use and compensation* only such moneys as were not needed to pay the taxes and repairs on the said property and for the personal wants of this respondent." The plaintiff collected the rents, boarded the defendant, paid the expenses and applied the balance to his own use. This continued until the defendant left his house, November 22, 1907, went to live with her daughter and deeded all her property to her daughter, taking a mortgage back conditioned upon her being supported by her daughter during her life.

(10)    "In mutual accounts and dealings an obligation arises not from each item but from and for the balance only. The varying balance is the debt. Hence, the statute of limitations begins to run only from the date of the last item." *Cargill* v. *Atwood*, 18 R. I. 303. Furthermore, in such a running account, with a promise to pay the plaintiff by will, the plaintiff would have no right of action, in the absence of a repudiation of the agreement, until it had been fully performed.

(11)    In *Schempp* v. *Beardsley*, 83 Conn. 34, *supra.*, the court said: "Another reason of appeal is the allowance of the claim for services performed more than six years prior to the death of Miss Coffey.

"Her contract being in part for the conveyance of real estate, the plaintiffs can support no action upon it. It was not, however, a mere nullity. While the Superior Court has found that it was void, we understand this to be simply a mode of stating that it was within the statute of frauds.

Such an agreement may be available for some purposes as a factor in constituting a defense. It may also, under certain circumstances, avail to avoid a defense. Such circumstances are presented in the case at bar.

"If the plaintiffs had sued Miss Coffey, during her lifetime, for the reasonable value of support furnished her, she could have set up the oral agreement in defense, to show that it had been furnished under a special contract which fixed a precise compensation, and postponed payment until her decease. *Clark* v. *Terry*, 25 Conn. 395, 401.

"The law calls on no one to perform a nugatory act. As such a suit could not be maintained, to bring it would have been useless. The statute of limitations assumes the existence of a cause of action and also of what, were it not for the statutory prohibition, would be a right of action. The oral agreement between Miss Coffey and the Schempps purported to give them what would constitute, on due performance of their part of it, a cause of action against her personal representatives for damages, should it be found, upon her death, that she had not done what she, on her part, had agreed to do. So long as she lived, in the absence of repudiation by her, the plaintiffs could not have sued upon the contract, for there would have been no breach; nor for the reasonable value of the support which they had furnished, because that was, by the contract, to be paid for, not by payment of what it was worth, but by a transfer of what she might be worth at her decease, whether more or less than such reasonable value.

"The contract never was repudiated by Miss Coffey during her lifetime. It could not be, so as to affect their rights, without notice of such repudiation to the Schempps. The execution of her will in favor of others she never made known to them; nor would its execution have prevented her from subsequently doing what her agreement with them required.

No right of action, therefore, of any kind, by the Schempps against Miss Coffey, existed during her lifetime. Upon

her death a right of action arose not for damages measured by the value of the estate which she had left, because no action on the special contract could be maintained, but for damages measured by the value of the support furnished. As a foundation for recovering these latter damages, the special contract was material, because it showed that the support was furnished under circumstances which excluded the supposition that either party regarded it as gratuitous. *Grant* v. *Grant*, 63 Conn. 530, 542, 29 Atl. 15; *Hull* v. *Thoms*, 82 Conn. 647, 74 Atl. 925. It furnished also a sufficient answer to the defense of the statute of limitations, by showing that no action brought earlier could have been maintained. That being so, the right of action did not accrue, either in whole or part, more than six years before Miss Coffey's death, and the plaintiffs were entitled to recover the whole value of the whole support furnished, provided they had made due claim for it."

In *Leahy* v. *Campbell*, 75 N. Y. Suppl. 72, the court, pp. 74, 75, says: "The referee also found that the decedent agreed to compensate the respondent for services and disbursements by leaving to respondent all his property, both real and personal, but the death of said Clarke was sudden and unexpected, and on that account he failed to perform this agreement. If the respondent rendered services and disbursed moneys upon the faith of such an agreement he is entitled to recover of the estate on a *quantum meruit*, the provision for compensation not having been made as agreed." (citing cases.) "According to the agreement, as found by the referee, there was no obligation to pay until after the death of the employer. Inasmuch as he never repudiated the agreement, there was no breach of contract until he died without having performed it, and the cause of action for services did not accrue until that time. In such case, the statute of limitations is not a bar, and the employé may recover for all services rendered and disbursements made on the faith of the agreement prior to a breach thereof."

In *Collier* v. *Rutledge*, 136 N. Y. 621, the court quotes the opinion of the Supreme Court appealed from, which contains the following: "The contract between the plaintiff and the decedent, as found by the referee, was that for the additional services to be rendered by the plaintiff, 'he (the intestate) would provide for her in his will or by a codicil.' This must be taken to have been the contract since the finding is supported by evidence, and no question of variance was raised on the trial. The decedent made no testamentary provision for the plaintiff, and it is well settled that when services are rendered to a testator under a contract to make compensation therefor by will, and he dies having made no provision therefor, the person rendering the services stands as a creditor of the estate and may recover from his representatives the value of the services. (citing cases.) The contract excludes the idea that the services were gratuitous." The judgment of the Supreme Court was affirmed.

The cases cited supra, hold that, in the absence of repudiation of the contract, to pay for services by will, the statute of limitations begins to run upon the death of the person receiving the services.

In *Bonesteel* v. *Van Etten*, 20 Hun. 468, the plaintiff from 1855 to 1859 resided with his father as one of his family, and rendered services to him in pursuance of an alleged verbal agreement by which his father was to pay him for said services by a devise or bequest in his will in plaintiff's favor. In 1859 the father discharged the plaintiff from his service, ordering him to leave the house, and saying to him: "You have got all you ever need to expect here." The father died in 1878, and the plaintiff then presented his claim for the services so rendered. The court, p. 470, said: "The contract between these parties, if any existed, was at an end in 1859. The defendant's testator had terminated it with offensive language and driven plaintiff from his house. There was a breach of the contract by the father. He would not allow the plaintiff to earn the wages agreed upon. By such breach of the contract, by such refusal to perform, the

father became liable to plaintiff for the value of the services already rendered. The plaintiff could have brought his action for damages immediately." . . . "'The plaintiff in this case has in effect brought his action for his damages caused by the refusal of testator to fulfill his agreement. The amount claimed is the value of the work and labor done by him for his father. Whatever his damages may have been they accrued when his father refused to allow him to go on and fulfill the contract. For an action might then be brought. Hence the statute of limitations began to run for the breach, and the plaintiff's claim has been long barred." See, also, *Ga Nun* v. *Palmer*, 116 N. Y. S. 23, judgment affirmed 123 N. Y. S. 1117 and *Henry* v. *Rowell*, 31 Misc. Rep. 384, 64 N. Y. Suppl. 488, affirmed 63 App. Div. 620, 71 N. Y. Suppl. 1137. In this case the court, Gaynor, J., said: "In cases like the present one, where the contract is broken while it is being performed by the parties, the cause of action for the breach which arises at once is the only cause of action which accrues. That the contract is not yet completed is no reason for postponing the commencement of the action to the time when it would be completed, if carried out, and reckoning the running of the statute of limitations from that time. The plaintiff here was not at liberty to continue to treat the contract as in life until the decedent's death. He had not the legal right to require or demand that she leave a will giving him all of her property, notwithstanding that she had not received the consideration agreed upon therefor, nor that she provide in her will for a fair compensation to him (which he is now suing for) for the amount of board and lodging which she had received from him; for she had not agreed to do that. His only right was to demand of her the damage she became liable to him for by her refusal to go on with the contract, and that he places in this action at the value of the board and lodging he furnished to her."

In *Canada* v. *Canada*, 6 Cush. 15, the plaintiff, in consideration of a promise on the part of the defendant, to leave

him at defendant's decease all his real estate, promised the defendant to remain with him upon his farm, and carry it on so long as the defendant lived, and to forbear payment of his labor, until the defendant's decease, and then to receive the real estate (subject to some legacies to defendant's heirs), in full payment for his services. The defendant conveyed a portion of the estate to another and also cancelled a will made in pursuance of the contract, and subsequently made a new will in violation of the contract. The court, Dewey, J., pp. 17 and 18, said: "If the special contract set forth in the award of the arbitrators was open and unrescinded, and had not been terminated by the acts of either party, it would necessarily defeat the right of the plaintiff to recover for the services he has rendered. The plaintiff concedes this, and seeks to avoid the effect of the special contract as a bar, by showing that the defendant has by his own acts, in conveying to a third person a portion of the real estate, which is the subject of the special contract, incapacitated himself from fulfilling his contract with the plaintiff, and thus authorized the plaintiff to treat the same as rescinded." . . . "In the opinion of the court, a conveyance by the defendant of his real estate, to raise money to discharge his antecedent debts, would be such a violation of this special contract, as to authorize the plaintiff to treat it as determined by the acts of the defendant, and being thus violated by the defendant, to institute an action to recover compensation for his labor and services under the contract."

While therefore in the case of an agreement to pay for services by devising or bequeathing property to the person rendering the services, the right of action ordinarily accrues upon the death, without making such compensation of the person so agreeing to pay, that is not the case where the contract is repudiated. In this case we are of the opinion that the agreement, if any existed, was clearly repudiated by the act of the defendant in leaving the house of the plaintiff and conveying all her property to her daughter, taking back a mortgage conditioned upon her being supported by

her daughter during life. The defendant left the plaintiff's house November 22, 1907, and the conveyance of her property to her daughter immediately followed. The right of action therefore accrued, and the statute of limitations began to run upon said date. The charge of the court that all items of the plaintiff's claim prior to July 10, 1903, were barred by the statute of limitations was erroneous.

The plaintiff's seventh, twelfth and fourteenth exceptions are sustained. His other exceptions are overruled. The case is remitted to the Superior Court for a new trial.

*A. B. Crafts,* for plaintiff.

*Felix Hebert, Vincent, Boss & Barnefield,* for defendant.