[1] Reported in 277 N.W. 549.
Peter Roberts, a bachelor 67 years of age, died intestate December 28, 1935. His closest surviving next of kin were two sisters, 54 and 70 years of age. They have both been feeble-minded since *Page 219 
infancy and confined to an institution for several years. Decedent was legal guardian of their estates from 1918 until his death.
Appellant, a first cousin of decedent's, asserting that she and decedent entered an agreement prior to his death whereby she agreed to give him a home and such care as he should require for the remainder of his life, in exchange for his promise to leave her all his property at his death, presented a claim to the probate court asking to be awarded the residue of the estate, or in lieu thereof, the full value of such residue. The facts tending to prove the agreement appear substantially as follows:
Decedent's aunt, with whom he lived at St. Charles, Minnesota, died about November 1, 1933, leaving him without a home. At her funeral decedent made statements to certain persons that he was going to make his home in Winona with appellant, who was a practical nurse. He later talked with her at her home and made arrangements to go and live with her. Thereafter, but before going to live with appellant, he told a Mrs. Milbrandt that, "he had made all arrangements to come to stay with Ella [appellant] and make his home with her the rest of his life, and whatever was left after he was dead was to go to Ella." He made substantially the same statement to other parties. On various occasions he made additional statements indicating that appellant was to have his property after his death. He told the witness Neiheisel, "after my death Ella will have the farm and car," and another witness that the farm was to go to Ella after he was through with it. Again, referring to his automobile, decedent stated to one of the witnesses, "I probably won't need it so long, but Ella and the boys can have it." These witnesses testified that they understood from their conversations with deceased that he planned to make a will in the future leaving all his property to the appellant.
Decedent went to live with the latter November 19, 1933, and remained there until his death some two years later. During this time appellant fully performed her agreement and provided decedent with board, room, and washing. She drove the car for him on request and took care of him through various ailments, including his last illness. She was not paid for any of her services, and *Page 220 
testified that she did not ask for anything because she "was to receive all his property that was left at the time of his death." Except for the alleged contract, decedent did not make, nor attempt to make, any assignment or transfer of his property by deed, will, or otherwise, and there is no evidence that he ever manifested any intention or desire to do so.
At his death decedent had in his hands as guardian for his sisters, and belonging to them, personal property valued at $5,042.41. This property was unmarked and intermingled with his own, so it could not be ascertained which was his and which was in the guardianship fund. The parties stipulated as to the value of the property in his possession. This consisted of a small farm worth $1,500; a one-third interest, worth $1,480, in the unpaid purchase price of another farm owned by him and his sisters and sold for $12,000 on contract for deed, title remaining in the owners; notes, bonds, securities, an automobile, and other personal property worth $9,700. The total value of this property was $12,680, subject to the charge of the guardianship fund, or $5,042.41. Thus decedent, at the time of his death, owned real and personal property valued at $7,637.59, subject, of course, to administrative expenses and unpaid claims, if any.
The probate court allowed appellant $1,385 as the reasonable value of her services, but refused to allow her the residue of the estate or the value thereof. On appeal to the district court issues were framed and a trial had before a jury. Evidence was introduced as to facts heretofore mentioned and also the reasonable value of the services. Respondent, administrator of the estate, admitted at all times that appellant was entitled to the latter, and offered no evidence in either court below. The trial judge in the district court refused to submit any issue to the jury except the one relating to the reasonable value of appellant's services, and it returned a verdict for $1,700, $50 of which was reimbursement for cash advanced by appellant for decedent's burial. This appeal is taken from the denial of appellant's motion for judgment notwithstanding the verdict or a new trial. *Page 221 
Assuming the alleged agreement was made as appellant claims, it must be regarded as a promise to devise real and personal property, and, not being in writing, was concededly within the statute of frauds as far as the realty was concerned. [2 Mason Minn. St. 1927, §§ 8456, 8459.] Appellant claims that the contract was divisible and the part relating to personalty enforceable in probate court. However, in our opinion, the contract was an entirety, and if it is to be enforced at all it must be enforced as an entirety. Decedent owned real estate at the time the agreement was made, at the time of his death, and all during the time intervening. His statements to third parties and all the other circumstances show that the transfer of both real estate and personalty was contemplated by the parties. The consideration given by appellant was entire. Such an agreement is generally regarded as indivisible and an entirety and must be enforced as such. Svanburg v. Fosseen,75 Minn. 350, 78 N.W. 4, 43 L.R.A. 427, 74 A.S.R. 490; Ellis v. Cary, 74 Wis. 176, 42 N.W. 252, 4 L.R.A. 55,17 A.S.R. 125; Estate of Kessler, 87 Wis. 660, 59 N.W. 129,41 A.S.R. 74; 71 A.L.R. 479, 485. See also Todd v. Bettingen, 98 Minn. 170,107 N.W. 1049, 8 Ann. Cas. 960. The rule has been stated thus (25 R.C.L. § 190, p. 587):
"Where the consideration for the agreement is entire, e. g., services to be rendered, and the property contemplated consists of both realty and personalty, the agreement is regarded as entire in its nature, and, failing in part, the whole fails."
Appellant's claim to the residue of the estate, or, in other words, for specific performance of the contract, was properly disallowed by the probate court. It has no jurisdiction over such an action. Svanburg v. Fosseen, 75 Minn. 350, 78 N.W. 4,43 L.R.A. 427, 74 A.S.R. 490; 3 Dunnell, Minn. Dig. (2 ed. Supps. 1932, 1934, 1937) §§ 3593i, 3658. Specific performance must be sought in the district court. Anderson v. Anderson,197 Minn. 252, 266 N.W. 841; 6 Dunnell, Minn. Dig. (2 ed. Supps. 1932, 1934, 1937) § 10207. Appellant claims that upon appeal to the district court the latter should have granted specific performance. This contention *Page 222 
overlooks entirely the well settled rule that upon an appeal from probate court the district court exercises only appellate and not original jurisdiction. It has no greater or different jurisdiction than did the probate court. Goetzmann Co. v. Gazett, 172 Minn. 68, 214 N.W. 895; Minneapolis Tr. Co. v. Birkholz, 172 Minn. 231, 215 N.W. 223; 5 Dunnell, Minn. Dig. (2 ed. Supps. 1932, 1934, 1937) § 7795. While contracts such as these may be specifically enforced in a proper case (see Simonson v. Moseley, 183 Minn. 525, 237 N.W. 413), no question relating to specific performance was presented to the district court upon an appeal from the probate court, and consequently is not reviewable on this appeal.
Aside from jurisdictional questions, appellant's claim to the value of the estate, in lieu of specific performance, is a claim for recovery of damages for breach of the agreement. Being within the statute of frauds, damages for breach of the contract cannot be recovered by action in any court. Fargusson v. Duluth Improvement Co. 56 Minn. 222, 57 N.W. 480. Such is the general rule. 69 A.L.R. 14, 76. See also 106 A.L.R. 742, 751.
The respondent by answer denied the making of the alleged contract. There is nothing to the claim that he waived the right to invoke the statute of frauds by failure to plead it. 6 Dunnell, Minn. Dig. (2 ed. Supps. 1932, 1934) § 8857.
The district court did not err in excluding evidence of the value of the estate as bearing on the reasonable value of appellant's services. Schwab v. Pierro, 43 Minn. 520,46 N.W. 71; 69 A.L.R. 14, 100, note 13; 106 A.L.R. 742, 753. The case does not come within the rule adopted in Oxborough v. St. Martin, 169 Minn. 72, 210 N.W. 854, 49 A.L.R. 1115, because decedent's promise was made without reference to the value or amount of the services to be rendered by appellant. Those matters were uncertain and depended largely on decedent's health for the balance of his life and the length of time he lived. Thus the contract cannot be treated as an admission or agreement as to the reasonable value of the services thereafter rendered. The distinction between a contract like that involved in the instant case and one in which the services to be rendered are definite in amount, and its effect on the probative use *Page 223 
of the contract on the question of the reasonable value of the services, is recognized in Quirk v. Bank of Commerce Trust Co. 157 C.C.A. 130, 244 F. 682.
The claim that decedent delivered title to his automobile and the contents of his safety deposit box to appellant prior to his death by giving her the keys to the car and box is without merit. The circumstances surrounding her possession of the keys are entirely too uncertain and ambiguous to warrant such a conclusion. There were two sets of keys to the car. On occasions appellant was given one set, but only for the purpose of driving the car for deceased. She never used the car for her own purposes or even drove it alone. There is nothing to show an intent to transfer title to her. The same is true of the safety deposit box and its contents. Decedent gave her the key to keep for him but at all times treated the box and contents as his own. He secured the key from apellant when he wished to open the box and returned it to her when he was through with it, but on these occasions appellant waited outside the bank for him. She did not see the contents of the box prior to his death or know what was in it. A finding of delivery, actual or symbolic, cannot be based on such evidence. Her possession of the keys was probably that of a bailee or servant, and not that of an owner. Citation of authority is unnecessary.
Appellant was faithful, considerate, and efficient in rendering valuable services to decedent during the last few years of his life and is entitled to recover the full reasonable value thereof. On the record here, the award made was adequate.
Affirmed. *Page 224