# OWEN L. OWENS AND ANOTHER v. ELIZABETH K. OWENS AND ANOTHER.[1]

May 17, 1940.

No. 32,291.

[1]Reported in 292 N. W. 89.

*Harold N. Rogers* and *Marshall Bartlett,* for appellants.

*Karl H. Covell,* for respondent Elizabeth K. Owens.

*Child & Child,* for respondent Lucille Owens Parrish.

GALLAGHER, CHIEF JUSTICE.

This is an appeal by the executors of the estate of John Lloyd Owens from a judgment in the sum of $52,349.50 against said estate and in favor of the administratrix of the estate of Robert J. Owens.

Robert J. Owens, a resident of Hennepin county, died intestate on December 1, 1931. Surviving him were a son, John Lloyd Owens, and three daughters, Elizabeth K. Owens, Lucille Owens Parrish, and Matie Owens Lenhart. John and Elizabeth were thereafter appointed joint administrators of their father's estate. In September, 1932, they filed a final account and petition for distribution. Lucille objected to the account, and no action was taken thereon. On October 4, 1933, they filed an amended account and petition for distribution, to which Lucille filed written objections and a petition asking for John's removal as administrator on the grounds that he had not listed all of the estate assets in the inventory and account, had mismanaged the estate, and had inconsistent and adverse interests therein. Lucille later filed a petition asking for the removal of both administrators. These petitions were denied by the probate court. Before the account was acted upon John died leaving a will by which he bequeathed

his estate to Jessie E. McLaughlin, his secretary, and to Owen L. Owens, his uncle, who were named as executors therein.

On April 25, 1935, the last day for filing claims against John's estate, Lucille, by her attorneys, served on Elizabeth a written demand that she in her capacity as administratrix file a claim against John's estate for the sum of $120,000 for money had and received by John for the use of Robert by reason of the following facts:

"That the said John Lloyd Owens appropriated and converted to his own use certain mortgages upon real estate of the reasonable value of fifteen thousand five hundred dollars ($15,500).

"That said John Lloyd Owens appropriated and converted to his own use four hundred fifty (450) shares of the common capital stock of the American Grain Separator Company, a corporation, of the reasonable market value of forty-five hundred and no/100 dollars ($4,500).

"That said John Lloyd Owens appropriated and converted to his own use divers monies, stocks, bonds and securities and other property belonging to the said Robert J. Owens of the reasonable value of one hundred thousand and no/100 dollars ($100,000)."

Elizabeth filed the claim in the form and for the amount requested. She later commenced a replevin action against the executors of John's estate to recover certain gold notes in the sum of $5,000 of the Deep Rock Oil Corporation (formerly the Schaffer Oil & Refining Company) and 101 shares of stock of the American Grain Separator Company, this being the company owned and managed by Robert and John during their respective lives. Notice of the commencement of the replevin action was given to the heirs.

In July, 1935, Elizabeth filed in probate court a petition for leave to accept a compromise offer of settlement proposed by the executors of John's estate whereby she, as executrix of the father's estate, would receive the notes and stock involved in the replevin action and $300 in cash, representing interest on the Schaffer bonds collected by John in his lifetime, the same to be allowed as a

claim against his estate. The proposed settlement included a release by John's estate of all claims for services as coadministrator of Robert's estate and was conditioned upon acquiescence therein by all persons interested in Robert's estate.

Lucille filed written objections to the proposed settlement, and her attorneys appeared in court on the date of the hearing on claims and orally objected to the allowance of the claim in the sum requested. Over their objection it was allowed in the sum of $300. The order of allowance, which was filed on August 21, 1935, reads:

"Karl H. Covell appeared on behalf of the claimant, and Marshall Bartlett appeared on behalf of the executors of the estate of John Lloyd Owens. It was agreed between said counsel that the said claim should be allowed in the sum and amount of three hundred and no/100 ($300.00) dollars."

The order also recites:

"Lewis W. Child appeared on behalf of Lucille Owens Parrish and her attorneys of record, Child & Child, and made oral objection to the allowance of said claim in said amount. No testimony was offered to substantiate said objection, and no written objections have been filed."

On September 14, 1935, Lucille's attorneys appealed to district court from the order allowing the claim. On the same date they made written request on Elizabeth, as administratrix, to appeal, but she failed to do so although her attorneys later took part in the proceedings based on Lucille's appeal. After some preliminary skirmishes, propositions of law and fact were served and filed and the claim came on for hearing in district court, with the result mentioned in the first paragraph of the opinion.

1. Appellants contend that the order of the probate court allowing the claim was a consent decree and, as such, not appealable. Even if this question were before us on an appeal by the administratrix from an allowance of the claim in question, we would find it difficult, in the light of the record, to hold the order

to be a consent decree so as to prevent an appeal. While it contains a statement by the probate court to the effect that the attorneys for the two estates appeared in open court and consented to an allowance of the claim in the sum of $300, it also shows that an attorney for Lucille appeared and specifically objected to the allowance in that sum. The record further discloses that the administratrix of the estate of Robert J. Owens had petitioned the probate court for permission to settle the controversy with the John L. Owens estate. That petition included a provision to the effect that the settlement was to be conditioned upon acquiescence by all of the parties interested in Robert's estate. As indicated, Lucille, one of the interested parties, not only refused to acquiesce but specifically objected to the allowance in the sum of $300.

Leaving aside the question as to whether the administratrix had a right to appeal, Lucille, who actually took the appeal, was not a party to the settlement and did not consent thereto. If she was an aggrieved party within the meaning of 3 Mason Minn. St. 1938 Supp. § 8992-166, she cannot be denied the right to appeal because of consent to the allowance of the claim in probate court by the representative of the estate.

2. The next question presented has to do with whether Lucille was a person aggrieved within the meaning of 3 Mason Minn. St. 1938 Supp. § 8992-166, so as to permit her to appeal from the probate court's order. That section provides:

"Such appeal may be taken by any person aggrieved within thirty days after service of notice of the filing of the order, judgment, or decree appealed from, or if no such notice be served, within six months after the filing of such order, judgment, or decree."

This court in In re Estate of Burton, 203 Minn. 275, 281 N. W. 1, held that a pretermitted grandchild who by contract with the children of a testator acquired an interest in the residue of his estate is a party aggrieved by an order of the probate court allowing a claim against the estate and as such entitled to appeal

to the district court. See also In re Guardianship of Hoffman, 197 Minn. 524, 267 N. W. 473; Sheeran v. Sheeran, 96 Minn. 484, 105 N. W. 677; and In re Estate of Osbon, 179 Minn. 133, 228 N. W. 551.

This is not a case, however, where the appeal is from the allowance of a claim against an estate in which an heir is beneficially interested. Here the claim in which the heir is beneficially interested is one against a third party. The situation is no different than if suit were brought on the claim against John Lloyd Owens in his lifetime. The representative has the right to maintain actions against third parties for the recovery of property or to collect debts due to the decedent. In maintaining such actions he represents the distributees. Beckman v. Beckman, 202 Minn. 328, 277 N. W. 355. As a general rule those beneficially interested may maintain the action only where the conduct of the representative makes it necessary for them to sue for the protection of their interests. Fraud, collusion, unwillingness or refusal to act on the part of the representative have been recognized as grounds justifying such action by a party beneficially interested. Buchanan v. Buchanan, 75 N. J. Eq. 274, 71 A. 745, 22 L.R.A.(N.S.) 454, 138 A. S. R. 563, 20 Ann. Cas. 91; Annotation, 22 L.R.A.(N.S.) 454. In such a situation the right to appeal for the time being passes from the representative to the heir to be exercised for the benefit of the estate. Hillman v. Young, 64 Or. 73, 127 P. 793, 129 P. 124; Rine v. Rine, 91 Neb. 248, 135 N. W. 1051; 2 Woerner, Am. Law of Administration (3 ed.) § 322, p. 1017, note 7; 21 Am. Jur., Executors and Administrators, § 1003.

The record does not disclose any fraud or collusion on the part of the representative. It does disclose that she failed to appeal from the order of the probate court allowing the claim against the estate of John Lloyd Owens in the sum of $300 after being requested to do so by Lucille. Whatever may have been Lucille's right to appeal in the first instance, she, without doubt, acquired that right when the representative declined to act. Furthermore, the representative thereafter appeared and adopted the

appeal as her own. A party entitled to join in an appeal may do so by entering a voluntary appearance in the appellate court after the appeal has been perfected. Farmers' L. & T. Co. v. Longworth (9 Cir.) 83 F. 336; Taney v. Hodson, 170 Minn. 230, 212 N. W. 196.

3. By an order dated February 21, 1936, the district court denied the motion of the executors of the John L. Owens estate for an order dismissing the appeal of Lucille from the order of the probate court on the ground that appellants had failed to file and serve a statement of the propositions of law and fact involved in the appeal. It granted Lucille permission to serve and file the propositions on condition that she pay to respondents the sum of $10 on or before May 15, 1936. Propositions of law and fact were served and filed, but the $10 was not tendered within the time required by the order. However, counsel for the executors of the John L. Owens estate answered the propositions of law and fact and failed to raise the question of the omission to pay the money until the time of trial. The trial court held, and properly so, that failure to comply with the condition had been waived. Deering v. McCarthy, 36 Minn. 302, 30 N. W. 813.

4. On August 17, 1909, there was issued to Robert J. Owens certificate No. 8 for 449 shares of stock in the American Grain Separator Company. The trial court found that this stock belonged to Robert J. Owens at the time of his death and was converted by John Lloyd Owens. Appellants contend that these findings are not supported by the evidence.

The stock book of the American Grain Separator Company which was admitted in evidence contains the stub of certificate No. 8. Written over the face of it in red ink are the words and figures "Cancelled 12-9-15." Attached to the stub is certificate No. 8 for 449 shares, and appearing thereon is the word "Cancelled." The stock book also contains the stub of certificate No. 12, which is for 449 shares issued to John L. Owens on December 9, 1915. The name of the person appearing under the caption "From

Whom Transferred" is Robert J. Owens, and the certificate transferred is identified as certificate No. 8 dated 8-17-09. The signature of John L. Owens appears on the receipt thereof. Also in evidence is certificate of stock No. 12 for 449 shares of stock in the American Grain Separator Company. In the blank space left in the printed form of this certificate for the insertion of the name of the owner there appears the name John L. Owens. It is apparent that this name was written into the blank over the erased name of Robert J. Owens. It also appears possible that still a third name was once in this certificate and subsequently erased.

The claim of appellants is that the evidence conclusively establishes the fact that Robert J. Owens made a gift of the certificate in question to his son John in 1915. Reliance is placed on the testimony of John given in probate court and used as evidence in district court, the testimony of Jessie E. McLaughlin and Alice Owens, and the certificates and certificate books of the American Grain Separator Company.

The legal elements of a gift are (1) delivery, (2) intention to make a gift on the part of the donor, and (3) absolute disposition by him of the thing which he intends to give to another. McDonald v. Larson, 142 Minn. 244, 171 N. W. 811; Logenfiel v. Richter, 60 Minn. 49, 61 N. W. 826; Roeser v. Ryckman, 121 Minn. 56, 140 N. W. 126; Hooper v. Vanstrum, 92 Minn. 406, 100 N. W. 229; Gagne v. Hayes, 168 Minn. 413, 210 N. W. 147; Quarfot v. Security Nat. B. & T. Co. 189 Minn. 451, 249 N. W. 668; Wunder v. Wunder, 187 Minn. 108, 244 N. W. 682.

From the evidence of Thomas J. Caton, handwriting expert, and from an examination of certificate No. 12, the trial court could reasonably have found that the certificate in question was never transferred to John Lloyd Owens and that a forgery had been attempted. Appellants claimed that there was no forgery; that stock certificate No. 12 was issued to John L. Owens in 1915 and his name inserted therein at that time; that in 1917, when he was having difficulties with his wife, John's name was erased

from the face of the stock certificate and that of Robert J. Owens inserted; that when the difficulties subsided the name of Robert was erased and that of John inserted again.

Accepting this claim as true, the court could still reasonably find that there never had been a gift of the stock. The transcript of the testimony given by John in probate court discloses that John there testified that his father had complete control of the American Grain Separator Company until his death, deposited all of the earnings thereof in his personal account, and loaned money to the corporation when it was needed; that in general Robert treated the business as his own and that John merely worked for his father and received a salary for his services. John further testified that the name of his father was inserted in stock certificate No. 12 because the father feared at the time that someone might get the stock and interfere with his absolute dominion over the affairs of the corporation. Mr. Preston, an auditor of the corporation in 1921 and 1922, testified that John then told him that he owned 200 shares of stock in the corporation and that his father owned 600 shares.

From this testimony the court could reasonably conclude that while there was a change in the nominal ownership of the stock certificate there never was a complete delivery thereof with intent to make a gift and to give up the rights and privileges incident to stock ownership.

5. 3 Mason Minn. St. 1938 Supp. § 8992-96, provides:

"If any person embezzles, alienates, or converts to his own use any of the personal estate of a decedent or ward before the appointment of a representative, such person shall be liable for double the value of the property so embezzled, alienated, or converted."

The trial court found that John Lloyd Owens, immediately after the death of Robert J. Owens and before the appointment of a representative of the estate of the latter, procured possession of certain Crescent Creamery Company, Ltd. stock owned by his father and, simulating Robert's signature on an assignment of the

stock certificate, purported to assign the shares to one Selma Graalum; that the value of these shares represented by the assigned certificate at the time of the embezzlement and alienation by John was $9,000. It determined that John became liable to the claimant administratrix for the benefit of the estate of Robert for double the value of the 100 shares of purported stock in the Crescent Creamery Company, Ltd.

Appellants contend that there is no basis for assessing the penalty of double value upon the claimed conversion of this stock because (1) the property was not embezzled, alienated, or converted to the use of John but rather was turned over by him to another and (2) there was no mention in the statement of claim nor in the original propositions of law and fact of a claim for double value on account of these shares and as a consequence appellants were deprived of the opportunity of asserting the defense of the statute of limitations.

The apparent purpose of the statute is to give to those persons subsequently declared the legal owners of a decedent's estate a remedy against persons attempting to deprive them of their heritage and to double the damages recoverable because of the likelihood that the wrongdoer can in such cases successfully conceal his malfeasance. This protection is as much needed where one in possession of a decedent's property before the appointment of a representative for the estate disposes of the property as it is where he uses the property himself. Further, the legislature, by including the word "alienates" in the statute, appears to have contemplated the very situation now before us. Consequently, we feel that the language of the statute and the reason for its enactment afford no support to appellants' claim that the section in question does not cover this case.

Neither does the second ground for complaint advanced by appellants impress us. While it is true that the claim for double damages was not inserted in the original statement of claim or in the propositions of law and fact, the district court permitted respondents to amend their propositions of law and fact so as to include a claim for double damages. We do not see how appel-

lants were thereby prejudiced. The suggestion that it could have advanced the defense of the statute of limitations is not tenable for the reason, among others, that the embezzlement and alienation of the stock by John was fraudulent, and hence the statute of limitations did not begin to run until the discovery of the cause of action. Schmucking v. Mayo, 183 Minn. 37, 235 N. W. 633. Further, it is our opinion that the statute of limitations relied upon (2 Mason Minn. St. 1927, § 9192) does not here apply because 3 Mason Minn. St. 1938 Supp. § 8992-96, is not a penal statute since it gives the same right as existed at common law and merely increases the damages payable to the party aggrieved. Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663; Shelton Electric Co. v. Victor Talking Mach. Co. 277 F. 433; Huntington v. Attrill, 146 U. S. 657, 13 S. Ct. 224, 36 L. ed. 1123.

We therefore conclude that the trial court did not err in assessing damages for the conversion of the Crescent Creamery stock.

6. Appellants contend that the value placed by the trial court on American Grain Separator Company stock was erroneous and not justified by the pleadings, evidence, or the theory on which the case was tried in that court.

The statement of claim originally filed by Lucille Owens Parrish and the John Lloyd Owens estate later adopted and filed by Elizabeth K. Owens in the same estate and the propositions of law and fact fix the value of this stock at $10 a share. On trial there was admitted in evidence the books of the corporation, from which it readily appears that the book value of this stock was far in excess of $10 a share and at least $76 a share. Although no dividends were paid on the shares, insofar as the record discloses, it does appear that Robert J. Owens during the last four years of his life took about $120,000 out of the corporation and that a surplus still remained at his death. There were only 800 shares of stock outstanding, and this evidence confirms the trial court's view that the stock was worth more than $76 a share. The respondents were permitted to amend the propositions of law and fact after the findings of fact and conclusions had been made,

and amendment was made so as to fix the value of the 449 shares appropriated at $34,349.50.

In our opinion it cannot be reasonably questioned that the trial court was justified on the evidence before it in finding the value of the shares to be $34,349.50. The matter of permitting the respondents to amend propositions of law and fact to conform to the evidence and findings of fact as made was within the discretion of the trial court, and under the circumstances we do not believe that its discretion was abused.

Judgment affirmed.

