IN RE ESTATE OF FRED W. HENCKE.
MARION HENCKE, APPELLANT.
FIRST AND AMERICAN NATIONAL BANK OF DULUTH
AND OTHERS, RESPONDENTS.[1]

July 20, 1945.

No. 33,983.

[1]Reported in 19 N. W. (2d) 718.

*Abbott, MacPherran, Dancer & Montague,* for Marion Hencke, appellant.

*Joseph E. Bell* and *Jerome F. Dixon,* for Royal G. Bouschor, special administrator of estate of Ida M. Barthell.

*Gillette, Nye, Harries & Montague,* for respondent First and American National Bank of Duluth, as administrator with the will annexed of the estate of Fred W. Hencke.

*Whipple & Atmore* and *Leming & Hobson,* for respondents Lillian Henke and others.

JULIUS J. OLSON, JUSTICE.

Marion Hencke, in her own behalf and as representative of the estate of Harriet I. Hencke, has appealed from an order denying *in toto* her blended motion for amended findings or new trial. In the printed record appears a notice of appeal by Royal G. Bouschor, as special administrator of the estate of Ida M. Barthell, from a similar order and from a former order denying his motion to dismiss the bank's appeal from the probate to the district court, but such appeal was never perfected by the filing of a return from the district court or the payment of the required fee in this court.

■ As to Bouschor and the bank's motion here made to dismiss his appeal for failure on his part to serve and file his brief in this court as required by Supreme Court Rule XI (200 Minn. xxxi), we can make no disposition either of the appeal or of the bank's motion, because there is no such appeal before us. Counsel for the bank and everyone else connected with the case seem to have been misled by the printing in the record of the notice of an appeal which in fact was never perfected.

The facts in this case are substantially the same as those recited in In re Estate of Hencke, 212 Minn. 407, 4 N. W. (2d) 353. A résumé, however, especially as to dates and events, may be helpful.

Frederick Hencke died testate, a resident of Duluth, in 1917. By his will, he gave his son, Fred W. Hencke, 249 shares of stock of a Wisconsin corporation, also giving him, *in trust* for the use and benefit of his (Frederick's) daughter, Ida M. Barthell, 247 shares. The only property owned by the corporation was the east half of a certain lot in Duluth, presently valued at about $100,000. Ownership of this property is what furnishes the cause for the present litigation. Hereinafter we shall refer to appellant as Marion and to the other parties mentioned by their given names only, *i. e.*, Frederick, Fred, and Ida.

Fred moved to California in 1917 or 1918. He died a resident of that state October 25, 1930. His will, dated May 2, 1930, was duly admitted to probate there, and domiciliary proceedings there are still pending. Ancillary administration in this state was granted to respondent bank on February 24, 1931, and is also still pending here. The will was admitted to probate as a foreign will.

Fred's only natural daughter, Harriet, died January 12, 1933. Marion, an adopted daughter, is the representative of Harriet's estate. Ida died February 28, 1942. Royal G. Bouschor is the representative of her estate.

The probate court, on Bouschor's petition in that behalf, on May 7, 1943, made and entered an interlocutory decree of distribution in Fred's estate, pursuant to § 115 of the probate code, Minn. St. 1941, § 525.481 (Mason St. 1940 Supp. § 8992-115), wherein it

determined that Ida, Fred's sister, should take two-thirds of the property here involved and that four California charities should each take one-twelfth, one-third in all. As to the rights of the charities, there is no longer any issue, all parties conceding their rights to be as determined by the probate court. The issue before both courts below and also here is limited to the question of who should take the two-thirds interest in this property. As we have seen, the probate court in the decree mentioned determined that Ida should take the entire two-thirds interest. On appeal, the district court came to the conclusion that neither Ida nor Marion was entitled to any portion of Fred's estate. Marion, said the court, "is not a blood relative" of decedent "and is not included among those who are to take the remainder of his estate under his will."

Since Ida's interest was determined adversely to her claim by the trial court, our inquiry narrows down to the question of whether, under the terms of the will, the interested parties take as of the date of death of Fred or whether they take, as determined by the district court, as of the date when the survivor of Harriet and Ida died.

Certain portions of Fred's will are deemed of sufficient importance to warrant recital. In the second paragraph, he declared:

"I hereby declare that I am unmarried, and that I have two (2) children, to-wit: my natural daughter, Harriet Hencke and my daughter by adoption, Marion Hencke."

In the third paragraph, he gave to Harriet his California home and numerous items of personal property. By the fourth paragraph, he gave a California corporate trustee all his other property "wheresoever situate" in trust for the purposes specified in the will. By subd. (b) thereof, the trustee was directed to pay to his sister (Ida) the sum of $140 per month—

"so long as she shall live; provided, however, that if my said sister's husband shall predecease her, the Trustee shall, from the date of said husband's death, pay to my sister, Mrs. Ida M. Barthell,

one-half (½) of the net income from my property located at 122 West Superior Street, Duluth, Minnesota, in lieu of the One Hundred Forty Dollars ($140.00) above provided. It is my wish that my property located at 122 West Superior Street, Duluth, Minnesota, shall not be disposed of during the lives of my daughter, Harriet Hencke, and my sister, Mrs. Ida M. Barthell. [The property mentioned is that presently involved.]

"(c) The Trustee shall pay from the net income of the trust estate a sum not to exceed Three Hundred Dollars ($300.00) per month to my daughter, Harriet Hencke, until she shall reach the age of thirty (30) years.

"(d) After my daughter, Harriet Hencke, reaches the age of thirty (30) years, then the Trustee shall pay to my said daughter, in monthly installments for the rest of her life, all of the net income from the trust estate, with the exception of the monthly payments to be paid to my sister, Mrs. Ida M. Barthell, in accordance with paragraph (b) above.

"(e) This trust shall finally cease and terminate upon the death of the survivor of my daughter, Harriet Hencke, and my sister, Mrs. Ida M. Barthell, and the Trustee shall distribute the entire net principal together with any accumulated income remaining in its hands at that time, to the issue of my daughter, Harriet Hencke, per stirpes, or if my daughter, Harriet Hencke, shall leave no living issue, or issue of issue, as follows: [Here follows a list of four California charities.]

"(5) Two-thirds (2/3) thereof unto my blood relatives in accordance with the laws of succession of the State of California, now in force.

\* \* \* \* \*

"Fifth: I purposely make no provision herein for my adopted daughter, Marion Hencke, the daughter of my former wife, Hattie Hencke.

"Sixth: In the trust created under this Will, I have provided for the monthly payment of a sum to my sister, Mrs. Ida M. Barthell, as requested by my father at the time of his death."

Under the provisions of the father's will (Frederick), 247 shares of stock were given to Fred *in trust* for the use and benefit of Ida. Fred, in violation of his duties as trustee, caused the title to this property to be conveyed by the corporation to himself as an individual, so that the record title has since stood in his name. This was the only property owned by the corporation. Fred later caused the corporation to be dissolved. Ida knew nothing of her brother's wrongdoing until after his death. In 1932, she brought suit to vindicate her rights under her father's will. Respondent bank, as representative of Fred's estate, was made a party defendant, as were also others interested in the property. We had occasion, in In re Estate of Hencke (212 Minn. 411, 4 N. W. [2d] 355), to consider this feature, and we there characterized the case as "a rather complicated litigation." However that may be, the fact remains that a settlement of that case was reached, and Ida's rights and remedies have been adjudicated and fully settled. On July 21, 1932, she executed a waiver and release of "any and all rights which I may have or claim" under Fred's will. The court has found, upon adequate evidence, that the terms and provisions of the settlement have been fully "carried out and complied with * * * up to the time" of Ida's death, some ten years later.

With these facts before it, the district court concluded that testator's intention was that title to this property was not to vest "until the termination of the trust created" in Fred's will. Its conclusion in this matter is founded upon what testator specifically directed in paragraph 4(b) of his will, *viz.*:

"* * * It is my wish that my property located at 122 West Superior Street, Duluth, Minnesota [property presently involved], shall not be disposed of during the lives of my daughter, Harriet Hencke, and my sister, Mrs. Ida M. Barthell";

and upon 4(e), *viz.*:

"This trust shall finally cease and terminate upon the death of the survivor of my daughter, Harriet Hencke, and my sister, Mrs. M. Barthell, and the Trustee shall distribute the entire net prin-

cipal together with any accumulated income remaining in its hands at that time, * * *."

The court was also of opinion that it seemed quite clear that both testators studiously and intentionally excluded Ida's husband from any possible interest in the estate of either. The important part as to this phase of Frederick's will is found in the third paragraph, where testator directed:

"* * * In case my said daughter shall die before her said husband, C. E. Barthell, then and in that case, the said trust shall immediately terminate and all of the said property shall immediately become the property of my said son, Frederick W. Hencke, his heirs, and assigns, forever, absolutely and without restrictions or conditions, but in case my said daughter, Ida M. Barthell, shall survive her said husband, C. E. Barthell, then all of the said property in this paragraph enumerated shall be and become the property of my said daughter, Ida M. Barthell, absolutely and without restrictions or conditions, and to her heirs and assigns forever."

Important, too, is the fact that in Fred's will Marion was expressly excluded.

The determinative question therefore is: What is meant by the words "blood relatives"? The district court has found that they mean those relatives of Fred "in existence at the time of the termination of the trust created in his [Fred's] will" and that they "are entitled to the remainder" of his estate, "their right to take and the proportions which they take to be determined by the laws of succession of the state of California in force at the time said will was made." It accordingly reversed the interlocutory decree of the probate court and directed that—

"said Probate court determine who are the heirs of the said Fred W. Hencke in existence on the 28th day of February, 1942, when said trust terminated, and determine how said estate shall be distributed among such blood relatives under the laws of succession

of the state of California in force at the time said will was made, to-wit: May 2, 1930."

Marion's position is that " 'blood relatives' in this will means those surviving at the death of decedent, and includes herself as well as Harriet Hencke." In support of her claim, she relies heavily upon an interlocutory decree of the superior court of California entered on August 20, 1943, determining *in rem* the interests of the parties. The law of that state as to this phase is similar to said § 115 of our probate code (§ 525.481 [§ 8992-115]). The important part of that decree is the concluding paragraph, which reads:

"Therefore It Is Hereby Ordered, Adjudged And Decreed that the assets of the Estate of Fred W. Hencke, Deceased, wherever situated be distributed upon the determination of probate as follows:

"One-twelfth (1/12) unto Jewish Orphans Home, located in or near Huntington Park, California;

"One-twelfth (1/12) unto the Childrens Hospital Society of Los Angeles, also known as the Children's Hospital at Los Angeles, California;

"One-twelfth to The Los Angeles Orphans Asylum, also known as the Catholic Orphans Home of Los Angeles, located in Boyle Heights, California, and

"One-twelfth (1/12) to the German Lutheran Church of Los Angeles, California, and

"One-third unto Marion Dorothy Hencke, as administratrix with the Will annexed of the Estate of Harriet I. Hencke, Deceased, and

"One-third (1/3) to Marion Dorothy Hencke, individually.

"It Is Further Adjudged that Marion Dorothy Hencke and Harriet I. Hencke are blood relatives of Fred W. Hencke, deceased."

Marion asserts that this decree determines the applicable California law, and, in pursuance thereof, that its construction of the will is binding upon the courts of Minnesota as to testator's intention. She also quotes from Jacobs v. Whitney, 205 Mass. 477, 480, 91 N. E. 1009, 1011, 18 Ann. Cas. 576, as follows:

"* * * the will is presumed in the absence of anything to the contrary to have been drawn in accordance with the law of the testator's domicil and will be interpreted accordingly, *its effect and validity in respect to the disposition of real property * * * will depend upon the lex rei sitae.*"  (Italics supplied.)

In addition, she cites In re Dennis' Estate, 98 Vt. 424, 129 A. 166; Higinbotham v. Manchester, 113 Conn. 62, 154 A. 242, 79 A. L. R. 85, and directs our attention to the notes appearing at p. 91, *et seq.* She concedes, however, that the rule upon which she relies—

"is by no means universally recognized. A great many cases hold in broad, general language, without qualification, that the Courts of any state have full power to construe any will in so far as it affects land within its borders. If the weight of authority were to be determined by mere numbers of reported cases, those so holding would doubtless be in the majority."

In its memorandum, attached to its findings and made a part thereof, the district court made some pertinent observations well worthy of recital here:

"That it was the intention of the testator that the remainder [estate] should not vest until the termination of the trust created in his will it seems to me is too plain for argument. There are so many contingencies and conditions preceding the vesting of the remainder under the terms of the will as to make that conclusion imperative.

       *    *    *    *    *

"If the intention of the testator as expressed in his will is still a cardinal principle of interpretation, it is difficult to see how the will could be interpreted to give the estate to either" Ida's husband or Marion.  Both the father and the son "in their wills studiously excluded" Mr. Barthell "from any possible interest in the estate of either."  With respect to the adopted daughter Marion, the court was of opinion that "his will expressly excluded" her "from participating in his estate.

"Nothing could be more violative of the rule that the intention of the testator should govern in the interpretation of his will than to give the remainder of the estate" to either of them, "both of whom he intended to and did in fact successfully exclude from benefiting in his estate.

"It is still the law that so far as the [devolution] descent of real estate is concerned, the law of the state where such real estate is situated controls. The judgment of the Superior Court of California so far as the estate involved here is concerned has no binding effect upon this court. The authorities are multitudinous on this question, but the Clark case in the U. S. Supreme Court [Clarke v. Clarke, 178 U. S. 186, 20 S. Ct. 873, 44 L. ed. 1028] and the Higgins case [First & American National Bank v. Higgins], 208 Minn. 295 [293 N. W. 585], are still controlling."

■ The rule to be applied in construing a will has been repeatedly stated and restated in our opinions. For present purposes, we think the one found in In re Estate of Freeman, 151 Minn. 446, 449, 187 N. W. 411, 412, is applicable.

"In the construction of a will the primary object is the ascertainment of the intent of the testator. The will is to be read as a whole. All of its separate clauses must be considered. Disconnected provisions will not be permitted to destroy its meaning. It has become a common expression that the meaning of a will must be gathered from everything within its four corners and from its reading as a whole. [Citing cases.] Rules of construction, derived from experience and found helpful, are not overlooked, but they are not technical guides which will be followed to a result contrary to the intent derived from the reading of the will as a whole."

That opinion also recites (p. 449):

■ "The rule is that a will speaks as of the death of the testator, and that an early vesting of an estate is favored, but this rule will not be applied so as to defeat the testator's intent," citing in support In re Bell, 147 Minn. 62, 179 N. W. 650, and cases cited.

Likewise, in First & American Nat. Bank v. Higgins, 208 Minn. 312, 293 N. W. 594, we held:

"The intention of the donor and the testator determines whether the named beneficiaries took vested or contingent interests in the trust."

And at p. 313 (293 N. W. 594):

■ "A future gift is vested when the right to receive it is not subject to a condition precedent. Where the right to receive the gift is immediate and only the time of payment is postponed, the gift vests immediately. *Where the right to receive the gift is postponed until after and is made to depend on the happening of a named event or condition, the gift is contingent and vests in the future. Futurity is then said to be annexed to the substance of the gift.* * * * A gift is contingent and does not vest until the time or happening of the event named where the only words of gift are a direction to a trustee to pay and distribute or divide and pay over at a future time or upon the happening of a specified event. * * * *The reason for the rule is that such a direction refers to the future and not to the present and hence can only be executed in the future.*" (Italics supplied.)

■ Upon the facts heretofore recited and the further fact that in Fred's will, paragraph 4(g), the trustee was given—

"absolute and uncontrolled discretion" in the event $300 per month should prove "inadequate to care for any unusual sickness or distress of my said daughter [Harriet], then the Trustee" was "authorized and empowered" to "apply or expend for the use and benefit of my said daughter, such portions of the principal of the trust estate, up to and including the whole thereof, as the Trustee, in its sole discretion, may deem necessary,"

we are convinced that the trial court arrived at a correct conclusion, and that the title to the remainder did not vest until the death of Ida, a member of a class to whom a life interest had been bequeathed.

■ Marion stoutly contends that the California decree is—

"binding upon this Court under the provisions of Section 1 of Article IV of the United States Constitution, and Section 687 of Title 28 of the *Federal Code* [28 USCA, § 687].

"It is our [her] contention that under the Minnesota law the Fred W. Hencke will is to be construed under the law of California, and that the construction of that will by the California Court of probate jurisdiction is binding on the Courts of this state." And that "under said constitutional provision, the Courts of this state have no right to disregard that decision and construe the will according to their own ideas. They must give full faith and credit to that decision. That decision is the law of this case. It is the authoritative construction of the will so far as concerns personal property or property which the Courts of this state should treat as personal property."

Her contentions are substantially the same as in the Clarke case, 178 U. S. 186, 20 S. Ct. 873, 44 L. ed. 1028, to which the trial court referred. In that case, testatrix died a resident of South Carolina, possessed of both real and personal property located there. She also owned real estate in Connecticut. By her will, duly admitted to probate in South Carolina, she devised and bequeathed all her property, both real and personal (178 U. S. 187, 20 S. Ct. 873, 44 L. ed. 1029), "of whatever description or wheresoever situated," to named beneficiaries. Her husband was named executor of the will and trustee of the interests of his minor daughter, both beneficiaries under her will. As such executor, and trustee of his infant daughter, he brought suit in South Carolina (178 U. S. 187, 20 S. Ct. 873, 44 L. ed. 1029) "praying for the 'judgment and direction of the court in regard to the true construction of said will, and especially the fifth and residuary paragraph thereof, and as to his powers and duties as such executor and trustee under said will * * *.'" A guardian *ad litem* was appointed for the daughter,—

"who duly answered, and, after hearing, the court decreed that the will of the testatrix, Julia H. Clarke, worked an equitable con-

version into personalty at the time of her death of all her real estate of whatsoever description and wheresoever situated; that the plaintiff as executor should receive, administer and account for the same as personalty; that he was, by said will, authorized and empowered to sell and convey the same for the purpose of executing the will, * * *."

An appeal from that judgment was taken to the supreme court of South Carolina and there affirmed. Clarke v. Clarke, 46 S. C. 230, 24 S. E. 202, 57 A. S. R. 675.

The United States Supreme Court, in affirming a decision of the supreme court of Connecticut (Clarke's Appeal from Probate, 70 Conn. 195, 39 A. 155, and 70 Conn. 483, 40 A. 111), said (Clarke v. Clarke, 178 U. S. 190, 20 S. Ct. 874, 44 L. ed. 1031):

"It is a doctrine firmly established that the law of a State in which land is situated controls and governs its transmission by will or its passage in case of intestacy. This familiar rule has been frequently declared by this court, * * *.

* * * * *

"Now, in the case at bar, the courts of Connecticut, construing the will of Mrs. Clarke, have declared that, by the law of Connecticut, land situated in that State, owned by Mrs. Clarke at her decease, continued to be, after her death, real estate for the purpose of devolution of title thereto. The proposition relied on, therefore, is this, although the court of last resort of Connecticut (declaring the law of that State) has held that the real estate in question had not become personal property by virtue of the will of Mrs. Clarke, nevertheless it should have decided to the contrary, because a court of South Carolina had so decreed. This, however, is but to argue that the law declared by the South Carolina court should control the passage by will of land in Connecticut, and therefore is equivalent to denying the correctness of the elementary proposition that the law of Connecticut where the real estate is situated governed in such a case. It is conceded that, had the will been presented to the courts of Connecticut in the first in-

stance and rights been asserted under it, the operative force of its provisions upon real estate in Connecticut would have been within the control of such courts. But it is said a different rule must be applied where the will has been presented to a South Carolina court and a construction has been there given to it; for, in such a case, not the will but the decree of the South Carolina court, construing the will, is the measure of the rights of the parties, as to real estate in Connecticut. The proposition, when truly comprehended, amounts but to the contention that the laws of the respective States controlling the transmission of real property by will, or in case of intestacy, are operative only, so long as there does not exist in a foreign jurisdiction a judgment or decree which in legal effect has changed the law of the situs of the real estate. This is but to contend that what cannot be done directly can be accomplished by indirection, and that the fundamental principle which gives to a sovereignty an exclusive jurisdiction over the land within its borders is in legal effect dependent upon the non-existence of a decree of a court of another sovereignty determining the status of such land. Manifestly, however, an authority cannot be said to be exclusive, or even to exist at all, where its exercise may be thus frustrated at any time. These conclusions are not escaped by saying that it is not the law of Connecticut which conflicts with the interpretation of the will adopted by the South Carolina court, but the decision of the court of Connecticut which does so. In this forum, the local law of Connecticut as to real estate is the law of that State as announced by the court of last resort of that State."

Much the same kind of arguments and contentions were also made in the former Hencke case (212 Minn. 415, 4 N. W. [2d] 357), where we held that real estate of a nonresident located here, not sold in the course of administration, should "be assigned under our law either under the will, if there be one, or under our statutes of descent." We there cited Boeing v. Owsley, 122 Minn. 190, 199, 142 N. W. 129, 132, holding (212 Minn. 414, 4 N. W. [2d] 357) "that the statutes contemplated a sale of a nonresident's real estate only 'for debts and charges to which it is subject under the

laws of this state.' " We there refused to apply the doctrine of equitable conversion to assist foreign judgment creditors who sought to reach this property but who had failed to file their claims here for allowance.

■ We, of course, have no quarrel with any foreign decree *in rem,* since it obviously reaches only property within the jurisdiction of the court rendering it. But we are, as we should be, mindful of the solemn duty resting upon us to maintain our past traditions and well-established legal principles.

Marion also claims error in that the court found—

"in favor of an alleged class of devisees in the absence of any testimony as to the existence of any such class, and erred in sending the appeal back to the probate court to determine what individuals are entitled to the estate in controversy and in what proportions."

In support of these contentions, she cites the last paragraph of said § 115 of the probate code, granting authority to that court to determine by interlocutory decree "the persons entitled to the estate, naming the heirs and distributees, describing the property, and stating the proportions or part thereof to which each is entitled." And since § 169 of the probate code (§ 525.72 [§ 8992-169]) provides that on appeal the cause shall be "tried, and determined in the same manner as if originally commenced in that court," the district court erred in not going into and determining what § 115 of the code requires.

As we have seen, the probate court determined that Ida should take the involved property to the exclusion of other claimants. Necessarily, then, the probate court did not determine any other claimants' rights except to eliminate them from participating in the estate. On appeal, the district court, for reasons already related, reversed and sent the case back to the court of original and exclusive jurisdiction, directing that court to determine who are the heirs of decedent as of the date when the trust terminated, and to determine how and to whom the estate should go "among

such blood relatives under the laws of succession" of California. In the opinion of the district court, such matters should be heard in and be determined by the court of original exclusive jurisdiction.

■ We said in In re Guardianship of Strom, 205 Minn. 399, 404, 286 N. W. 245, 248:

"Our cases hold that on appeal the district court 'may render such judgment as the probate court ought to have rendered, but its jurisdiction is appellate, not original, and it exercises probate rather than common-law jurisdiction. It has no greater or different jurisdiction than the probate court had in the premises.' Dunnell, Minn. Probate Law, § 70, and cases cited under note 40."

■ The next paragraph of the Strom case holds:

"The district court was in duty bound to try the case *de novo* and exercise its own discretion and not merely review the exercise of the discretion of the probate court. Washburn v. Van Steenwyk, 32 Minn. 336, 355, 20 N. W. 324. (Other cases bearing on the same subject are found in Dunnell, Minn. Probate Law, § 70, under note 42.)"

And so, in Brotton v. Donovan, 177 Minn. 34, 35, 224 N. W. 270, we said:

■ "Our constitution [art. 6, § 7] ordains that a probate court 'shall have jurisdiction over the estates of deceased persons.' This of course includes the administration of the estate and the distribution of what remains after the administration is concluded to the persons or persons entitled thereto, and this necessarily requires an adjudication as to who is an heir, devisee or legatee of the deceased [citing many cases]."

We discover no reversible error on this score. Accordingly, we affirm the order denying a new trial as to Marion Hencke, individually and as representative of the estate of Harriet Hencke, deceased.

So ordered.

MR. JUSTICE MAGNEY took no part in the consideration or decision of this case.