MAIDA GABEL, EXECUTRIX OF ESTATE OF EMMA
FERODOWILL, v. FRANK X. FERODOWILL.

95 N. W. (2d) 101.

February 13, 1959—No. 37,577.

*Loring & Anderson* and *Clifford F. Hansen,* for appellant.
*Grathwol & Ploetz* and *O'Neill J. Grathwol,* for respondent.

NELSON, JUSTICE.

Emma Ferodowill, who died on October 17, 1955, was survived by a daughter, Maida Grace Gabel, and her husband, Frank X. Ferodowill. Her will was duly admitted to probate and Maida Grace Gabel was appointed executrix. The listed assets of the estate consisted of several pieces of real estate which included lots 5 and 6, block 6, and property in block 7, Townsite of Langdon Park, Hennepin County.

The property in block 7 was appraised at $3,500. A petition to sell block 7, or in the alternative to mortgage the block 6 and block 7 property, was filed in the probate court of Hennepin County. On March 27, 1957, an order was entered authorizing the sale of the block 7 property. Frank X. Ferodowill, the surviving spouse and appellant herein, did not oppose the petition or order insisting that this block 7 property should be sold in order to provide the necessary funds for closing the estate.

Later the executrix filed another petition to sell the block 7 and block 6 property. This petition was heard August 27, 1957, at which time appellant objected to selling any part of block 6, contending that the sale of the block 7 property would bring ample funds to close the estate and pay expenses. The probate court issued its order directing sale of lots 5 and 6, block 6, incorporating in the order the following statement:

"* * * O'Neill J. Grathol, Esq., having appeared for the Executrix of said estate; E. J. Loring, Esq., having appeared for Frank X. Ferodowill, husband of said decedent, and objected to the granting of said petition; and the Court being fully advised in the premises and having determined that a sale is necessary and expedient, and by agreement in open court,

"It is ordered, * * *."

Appellant appealed to the district court from the order, and when

the matter came on for trial the executrix moved for a dismissal of the appeal upon the grounds that the order was nonappealable; and that the district court did not have the power to determine whether or not the appellant consented to the order, its power being limited to construing the words of the order. The motion was denied at that time.

Appellant's witnesses were the executrix, called for cross-examination under Rule 43.02, Rules of Civil Procedure, and Edward J. Loring, who had appeared as his attorney before the probate court. Respondent's witnesses were O'Neill J. Grathwol, who had appeared as attorney for the executrix before the probate court; James G. Kehoe, the probate judge who issued the order directing the sale; and the executrix. At the close of all the testimony, respondent renewed her motion to dismiss the appeal and it was granted. Appellant below thereupon appealed to this court from that order.

The executrix, when called for cross-examination as an adverse party under Rule 43.02, was asked to tell what she had overheard during the appearance before probate court. She stated that the gist of the hearing was a discussion of the claims which had been filed against the estate and which the estate could not pay; that it was all in regard to selling some property so that money could be raised to pay the bills. She gave the following testimony:

"Q. What else did you hear being said that day?
"A. Well, I don't remember now.
"Q. You don't remember anything else that was said at that hearing?
"A. I don't remember now, no.

\* \* \* \* \*

"Q. How long did that matter last in court?
"A. It was not a long hearing.
"Q. Ten minutes; 15 minutes?
"A. Oh, it might have been—it might have been half, three-quarters of an hour, something like that.

"Mr. Grathwol: It was a little longer than 15 minutes.
"Q. (Hansen) You have told us all that you remember hearing said that day, is that correct?
"A. As near as I can remember.

328

* * * * *

"Q. Either you remember it or you don't. Have you told us all that you remember taking place that day?

"A. Yes.

"Q. Is that correct?

"A. That's right.

"Mr. Grathwol: No cross examination."

Counsel for the appellant at this point made the following statement to the trial court:

"* * * it is my understanding that when we come into this court your Honor sits substantially as a Judge of Probate Court—sits de novo as a Judge of Probate, as though it never had been heard."

Counsel for respondent thereafter interposed the following remark:

"I might state, your Honor is not sitting as a Judge of Probate Court. He is sitting as a Judge of an appellate court.

* * * * *

"Court: That is what I stated.

"Mr. Grathwol: He said a trial de novo. You mean the trial on the Order has not started, as I understand it?

"Mr. Hansen: I take the position that all the hearing in this matter is de novo and the Court is authorized to hear any matters relating to what is properly before it.

"Court: The first question I have to determine is whether you are in court, whether I have jurisdiction.

"Mr. Hansen: That's right.

"Court: That means that I have to determine whether the appellant is an aggrieved party or not. I assume that the questions are to be directed to that particular question that is before the Court: Was the appellant an aggrieved party?

"Mr. Hansen: That's all that we are covering by these witnesses *for the time being*." (Italics supplied.)

When appellant called Edward J. Loring to testify on his behalf, counsel for the executrix interposed an objection to the admission of any testimony going to the validity of the probate court order, and the

court stated that it was not hearing the testimony for the purpose of determining the order's validity but only for the purpose of determining whether appellant was an aggrieved party. Counsel for the executrix then objected to the introduction of any testimony going to the question of whether or not the appellant was an aggrieved party and entitled to appeal, stating that the probate court order was a consent decree and under the doctrine of Owens v. Owens, 207 Minn. 489, 292 N. W. 89, not an appealable order. Counsel for the executrix further stated:

"* * * Also, it is our position that the District Court in this instance has no right, no jurisdiction, to inquire as to whether or not the appellant gave his consent. That has already been determined."

The trial court indicated that it was trying to determine whether the order directing sale was a consent decree and overruled the objection.

Appellant's witness then testified that at the probate court hearing the executrix was sitting three or four seats back of the first bench behind the counsel table and so far as he knew did not move from that position; that appellant was sitting on the first bench back of the counsel table; that the attorney for the executrix stated that they wanted to sell the lots in block 6 as they needed money to pay bills and expenses of administration; that he, Loring, stated in behalf of appellant that the executrix already had an order authorizing the sale of the block 7 property and that if they sold it at the appraised value they would have sufficient money to close the estate; that Mr. Grathwol then stated that they had attempted to sell the lot but could not do so. Loring further testified that, after counsel for the executrix had stated the position of the estate, Judge Kehoe stated that he was going to grant the license to sell; that Loring then suggested to the court that it should hear the appellant's position before it made such an order; and that the probate judge answered:

"Well, * * * It doesn't make any difference what your position is, I am going to grant the Order of License to sell."

Further direct testimony of Loring was as follows:

"Q. The probate records indicate that at the call of the case you made an objection to allowing an order—you made an objection against

an order to sell Lots 5 and 6, is that correct?

"A. That's right.

"Q. Was that objection ever withdrawn?

"A. No.

"Q. Did Mr. Ferodowill on that day, at any time, say anything to the Court along the line of consenting to such an Order?

"A. Not that I heard."

The following questions and answers are taken from the cross-examination of Loring:

"Q. Mr. Loring, do you remember me standing up in front of the Judge of Probate, standing at the front of the room by the bar there?

"A. Yes.

"Q. Do you remember Mr. Ferodowill coming up and going back and forth two or three times and standing up in front there?

\* \* \* \* \*

"A. He never came up to the bar as far as I know.

"Q. Do you remember Mrs. Gabel standing along side of me up in front of the bar?

"A. No.

"Q. Who stood up in front at the bar in front of the Judge?

"A. You and I.

"Q. You don't remember Mrs. Gabel being there?

"A. No.

"Q. Do you remember going into the Judge's chambers after the hearing and Mr. Ferodowill coming in there and discussing the matter?

"A. I don't recall that we ever went in the chambers after. I walked out after the Judge had told me that regardless of what position we had, he was going to grant the order to sell it. I told him then that if he did, we would appeal. I tried to explain to the Court, by showing the condition of the property in relation to the homestead by having this plat or a similar one, and Judge Kehoe just simply refused to hear it. There was no testimony taken that day at all; no witnesses were sworn; *and the Order was granted upon your representation and statement and that was all.*

"Q. You don't recall, Mr. Loring, the Judge inquiring if it was

agreeable with everybody to enter the Order?

"A.   No such remark was made to me or within my hearing.

"Court: You say there was absolutely no testimony taken?

\*    \*    \*    \*    \*

"A.   None. No witnesses were sworn at all. As I stated before, I tried to present our position as to why the license should not be granted and Judge Kehoe said to me, '*It doesn't make any difference what your position is, we are going to grant the license.*'

"Q.   Then you walked out?

"A.   I told him then we would appeal an Order if it was made granting any license.

"Q.   Then did you leave?

"A.   Shortly thereafter, yes. I gathered up my papers and walked out." (Italics supplied.)

Considering the aforesaid testimony and the admissions made by respondent's witnesses, any contention that the appellant was a party to a consent decree lacks conviction.

Mr. Grathwol testified for the respondent and stated that, according to the best of his recollection, all parties were before the probate judge and that everybody present answered in the affirmative to the judge's questions. There is no claim that any of the parties were sworn or that any testimony was taken in probate court. It is admitted that appellant had consented to the sale of the block 7 property, but appellant objected to the sale of the block 6 lots when the last petition was heard and insisted that it would not be desirable to sell them because a driveway that had served the appellant's home during an ownership of 40 years was involved and if it were included in the sale there would be a material reduction in value. It was also admitted that 25 feet on the northeast side of lot 6, block 6, was severed and retained by the estate when a sale was actually made under the order here involved.

The probate judge voluntarily took the witness stand in respondent's behalf. When asked on cross-examination whether he had any recollection of what took place at the hearing, he answered:

"Not too definite. We keep records and we keep books. I checked this. I had written this down. I remember the time—the general setup.

An old man, very old, didn't want to sell anything, I don't think; and I think we explained to him we couldn't sell his homestead but he made the point that part of this was the homestead; further settled on the business that these two lots were not a part of the homestead. I remember that much."

Judge Kehoe's testimony does not indicate any clear recollection of what was said at the hearing. In order to explain that situation, he said: "I am trying to give you the sense of what happened." He admitted that the appellant was present and objected to the issuance of an order directing sale but said that he had no recollection of being told that if he ordered the sale there would be an appeal. It stands admitted by Judge Kehoe's testimony that no reporter was present at the hearing. The judge in the course of his testimony said:

"* * * I try to hear these cases and get them moving, boy. That's what I did. I think we didn't take too much time on this, that discussion.

\* \* \* \* \*

"It wouldn't be over a half-an-hour, I don't think, altogether."

When asked if he had made any entries in his minutes, he testified that he had and that:

"They show exactly what's here: *Grathwol for the petitioner. Loring for the husband objects; by agreement in open court, Lots 5 and 6, Block 6, Townsite of Langdon Park may be sold.*" (Italics supplied.)

He then testified that it was the practice of his office to draw the orders; that the lawyers do not draw the orders directing property to be sold. He was shown a photostatic copy of the minutes of the probate court and was asked whether that was what his minute book showed, according to his recollection, and he answered:

"*Well, it is the sense of it.* I don't know as I would write all that—license granted to sell—I might—that's by agreement in open court—the appearances are there. I would remember the amount of the bond."

He was then asked:

"You can't say whether that's a copy of what your court records would—"

His answer:

*"No, I can't say whether it's verbatim. It's the sense of the record; that's all I can say."* (Italics supplied.)

So far as the testimony of Judge Kehoe is concerned, it seems to be based largely on what he termed "the sense of the record." The sense of the record, as we view it, clearly shows that Loring appeared for the appellant and objected to the sale of lots 5 and 6 of block 6 and that the appellant promptly appealed from the court's order as Loring stated to the court he would do. Judge Kehoe by his own entries in his minutes made at the hearing said that "Loring for the husband objects." He then said: "by agreement in open court, Lots 5 and 6, Block 6, Townsite of Langdon Park *may be sold."* (Italics supplied.) His minutes do not state who entered into an agreement in open court to sell the lots nor that all parties present and interested consented and agreed to the sale.

The appellant objected to certain portions of the testimony presented by respondent's witnesses as being mere conclusions. Even if appellant's objections to the testimony on that ground are ignored, and all of respondent's recorded testimony is accepted for what it is worth, it nevertheless remains patent that none of respondent's witnesses possess a clear and concise recollection of what transpired at the probate court hearing and that any so-called proof of appellant's consent to the order of license to sell is without any substantial support in the record. Any claim that the appellant consented to the order rests wholly in the field of speculation and conjecture. It cannot escape notice that the order drawn in the office of the probate judge is itself contradictory in that it first recites that appellant's counsel appeared and objected to the granting of the said petition to sell, without further explanation, and then states in the body of the order "and the Court being fully advised in the premises and having determined that a sale is necessary and expedient, and by agreement in open court, It is ordered, that the Executrix * * * sell * * *."

Appellant's action in promptly appealing to the district court is not inconsistent with the statement that he had appeared and objected to the petition but seems quite inconsistent with any alleged consent on

his part.

██ This court was faced with a somewhat similar situation in Owens v. Owens, *supra,* and there indicated that to bar a party's right to appeal under M. S. A. 525.712 because of alleged consent would be erroneous where the record contains contradictory evidence relative to the matter of actual consent. The holding in the Owens case is we think in conformance with this court's statements that appeals from probate court to district court are favored and that the statutes providing for such proceedings are to be liberally construed. The statutory language which provides for appeals from the probate to the district court by those who may be aggrieved by an order of the probate court is, we think, broad enough to cover anyone who has come properly before the probate court and is the losing party as the result of an adverse ruling or order. In re Estate of Dahn, 203 Minn. 19, 279 N. W. 715; In re Estate of Osbon, 179 Minn. 133, 228 N. W. 551; First Unitarian Society of Minneapolis v. Houliston, 96 Minn. 342, 105 N. W. 66; 1 Mason's Dunnell, Minn. Probate Law (2 ed.) § 56, and cases cited.

In Owens v. Owens, 207 Minn. 489, 492, 292 N. W. 89, 91, it was contended that the order of the probate court allowing a claim was a consent decree and, as such, not appealable, and the court said:

"* * * Even if this question were before us on an appeal by the administratrix from an allowance of the claim in question, we would find it difficult, in the light of the record, to hold the order to be a consent decree so as to prevent an appeal. *While it contains a statement by the probate court to the effect that the attorneys for the two estates appeared in open court and consented to an allowance of the claim in the sum of $300, it also shows that an attorney for Lucille appeared, and specifically objected to the allowance in that sum.* * * * As indicated, Lucille, one of the interested parties, not only refused to acquiesce but specifically objected to the allowance in the sum of $300.

"Leaving aside the question as to whether the administratrix had a right to appeal, Lucille, who actually took the appeal, was not a party to the settlement and did not consent thereto. If she was an aggrieved party within the meaning of 3 Mason Minn. St. 1938 Supp. § 8992-166,

*she cannot be denied the right to appeal because of consent to the allowance of the claim in probate court by the representative of the estate."* (Italics supplied.)

M. S. A. 525.712 (formerly Mason St. 1938 Supp. § 8992-166) provides in part:

"Such appeal may be taken by any person aggrieved within 30 days after service of notice of the filing of the order, judgment, or decree appealed from, or if no such notice be served, within six months after the filing of such order, judgment, or decree."

Section 525.71 provides what orders are appealable from the probate court to the district court:

"An appeal to the district court may be taken from any of the following orders, judgments, and decrees of the probate court:

\* \* \* \* \*

"(3) An order authorizing, or refusing to authorize, the sale, mortgage, or lease of real estate, or confirming, or refusing to confirm, the sale or lease of real estate."

Section 525.711 provides for venue; and § 525.72 provides for trial after perfection of appeal as follows:

"Within 20 days after perfection of the appeal, the appellant shall file with the clerk of the district court, and serve upon the adverse party or his attorney a clear and concise statement of the proposition, both of law and of fact, upon which he will rely for reversal of the order, judgment, or decree appealed from; within 20 days after such service the adverse party may serve and file his answer thereto and the appellant, within 20 days thereafter, may serve and file a reply. If there be no reply, allegations of new matter in the answer shall be deemed denied. \* \* \*

"After issues are so formed, the case may be brought on for trial by either party \* \* \*. Thereupon the cause shall be placed upon the calendar, tried, and determined in the same manner as if originally commenced in that court. \* \* \*"

Section 605.09 provides in part:

"An appeal may be taken to the supreme court by the aggrieved party in the following cases:

\* \* \* \* \*

"(3) From an order involving the merits of the action or some part thereof;

\* \* \* \* \*

"(7) From a final order, affecting a substantial right, made in a special proceeding, or upon a summary application in an action after judgment."

The order of the probate court in the instant proceeding is appealable to the district court under § 525.71(3). The facts are clearly in dispute. The appellant, surviving spouse of the deceased and an heir of decedent's estate, clearly is an aggrieved party and entitled to appeal under § 525.712, without regard to any alleged consent to the order. See, In re Guardianship of Hoffman, 197 Minn. 524, 267 N. W. 473; 1 Mason's Dunnell, Minn. Probate Law (2 ed.) § 58, and cases cited. As indicated by this court in the Hoffman case, not many cases are to be found under our decisions passing upon the question of who is a party aggrieved in fact situations similar to those presented on this appeal. No decision by this court resting on similar facts has been called to our attention by either party. However, the general rule appears to be that a party aggrieved is one who has been denied some personal or property right, or upon whom has been imposed some burden or obligation by the order appealed from. See, 4 C. J. S., Appeal and Error, § 183b.

This court in In re Hardy, 35 Minn. 193, 28 N. W. 219, said that a party aggrieved refers to one who as heir, devisee, legatee, or creditor has what may be called a legal interest in the assets of the estate and their due administration. Admittedly, the surviving spouse of a decedent qualifies as one having a legal interest in the assets of the estate and their due administration.

This court has held that a person financially interested in the allowance of a will in the probate court is a person aggrieved by an order of that court allowing the will and may take an appeal from such order although he was present in probate court upon the hearing of the

will, filed no written objections thereto, and entered no appearance therein. We have also said that it is probably true that one pecuniarily interested in a will contest may at the hearing appear and passively arraign himself either with the proponents or with the contestants and still there is nothing in the statute which prevents him from appealing from the order made though it was in favor of the side with which he had arraigned himself. In re Estate of Jefferson, 167 Minn. 447, 209 N. W. 267.

In In re Estate of Hartley, 214 Minn. 14, 16, 7 N. W. (2d) 679, 681, this court held that an interested party may appeal from the probate court to the district court although he did not appear or took a different position in the probate court, and in disposing of the question of right of appeal the court said:

"Our conclusion, therefore, is that the court below erred in holding that Deborah lost her right of appeal, upon the ground that by the contract obtained by fraud practiced upon her she consented to the probate of the will. *Since she had a right to appeal notwithstanding the position taken by her in the probate court, she did not lose that right by her consent in that court to the probate of the will.*" (Italics supplied.)

While in In re Estate of Ploetz, 186 Minn. 395, 243 N. W. 383, and earlier cases it was held under G. S. 1923, § 8988, that on appeal from the probate to the district court trial was de novo, the mere order of dismissal was not appealable. If appellant wanted review here of the decision rendered in the trial court, our procedure then required either a motion for a new trial or the entry of judgment of dismissal. This court said that under those circumstances an appeal in the one case could be taken from the order denying a new trial and in the other from the judgment.

In In re Guardianship of Jaus, 198 Minn. 242, 269 N. W. 457, this court took a different view. It held that a final order is one that ends a proceeding so far as the court making it is concerned and that an order of the district court dismissing an appeal from the probate court is a final order in a special proceeding and as such appealable. In In re Estate of Hencke, 212 Minn. 407, 4 N. W. (2d) 353, it was again

held that an order of the district court dismissing an appeal from the probate court is appealable, citing In re Guardianship of Jaus, *supra*. The district court order of dismissal in the instant case is therefore subject to appeal to this court as a final order in a special proceeding under § 605.09(7).

If a person has the right to appeal from the probate court to the district court, it follows necessarily that he must have the right to try out the original issues on appeal, for if this were not so, the right of appeal under the provisions of M. S. A. 525.71 and 525.712 of the probate code would become a barren right.[1]

While the jurisdiction of the district court in probate matters is appellate only, nevertheless, the district court on such appeals is not restricted by the rules governing courts of review but tries the case de novo and makes the order or decree which, in its judgment, the facts presented to it warrant. The right is a statutory right, not a constitutional right. It has been said that this right need not have been given, but, of course if no appeal to the district court were provided by statute from the orders and decisions of the probate court, there would, under our constitution, be a right of review in the supreme court on certiorari. It is therefore the function of the district court to try a cause on appeal from the probate court on the merits precisely as if it had been commenced in the district court. It is not the duty of the district court to determine whether the probate court abused its discretion since on the perfection of the appeal to the district court the conclusions reached by the probate court become immaterial. The district court will not be justified in dismissing an appeal on the ground that an appellant took a different position in the district court from that taken in the probate court nor that appellant did not appear in the probate court at all. The district court must therefore make and file its findings of fact and conclusions of law, the same as are required to be made in actions commenced in that court. The district court upon appeal from the probate court has no greater or different jurisdiction than the pro-

---

[1]See, In re Estate of Langer, 213 Minn. 482, 7 N. W. (2d) 359; Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541; Sheeran v. Sheeran, 96 Minn. 484, 105 N. W. 677.

bate court. It functions as an appellate court and not a court of original jurisdiction. The district court, however, must try and determine the issues in the same manner as if originally commenced in that court. Therefore, on appeal from the probate court to the district court the issue is the same as it was in the probate court. It is the duty of the district court to render such judgment as the probate court ought to have rendered, but its jurisdiction is limited to those matters of which the probate court has jurisdiction.

In In re Mills, 34 Minn. 296, 25 N. W. 631, this court said that the application brought before the district court by appeal from the probate court was before the district court for the exercise of its judicial discretion, precisely as it was before the probate court in the first instance. It was said in In re Estate of Jefferson, *supra,* that in case of a decision establishing an instrument as a last will and testament it is clear that the entire subject matter must be removed to the district court, since it must be a trial de novo, and the decision in the district court will either establish or reject the instrument propounded as the whole and only last will and testament of the deceased; and in In re Estate of Turner, 181 Minn. 528, 233 N. W. 305, this court held that *the issue on appeal is the same as it was in probate court;* that the question is not whether the determination of the probate court was right upon the record made in that court or upon the evidence then obtainable, *but whether the same order would be proper upon the record made and the evidence produced in the district court;* that it is to be remembered that upon such appeal there was a trial de novo of the issue raised by the petition and that therefore clearly the order of the probate court would not be evidence of facts alleged in the petition for the reason that the appeal annulled that order, and it was, on appeal, for the district court to determine the appeal upon competent evidence adduced before it; that in such a situation the order appealed from cannot be used as evidence to establish the allegation of the petition.[2]

---

[2]In re Guardianship of Hudson, 228 Minn. 508, 37 N. W. (2d) 742; In re Estate of Hencke, 220 Minn. 414, 19 N. W. (2d) 718; In re Estate of Cooke, 210 Minn. 397, 298 N. W. 571; In re Estate of Burton, 206 Minn. 516, 289 N. W. 66; In re Guardianship of Strom, 205 Minn. 399, 286 N. W. 245; In re Estate of Burton, 203 Minn. 275, 281 N. W. 1; In re

A review of our cases indicates that this court has consistently held that on appeal the district court may render such judgment as the probate court ought to have rendered, but its jurisdiction being appellate, not original, it would do so in the exercise of probate rather than common-law jurisdiction. It has no greater or different jurisdiction than the probate court had in the premises, but it is bound to try the case de novo, and, upon the whole of the evidence, exercise its own discretion and not merely review the exercise of the discretion of the probate court.

The record indicates that the executrix shortly after the hearing of August 27, 1957, placed lots 5 and 6, block 6, for sale with a realty company. She filed her report of sale on September 11, 1957. An order of confirmation was entered on the same date which was also the date on which the appellant served his notice of appeal. It also appears that on April 7, 1958, a report was filed wherein the executrix reported sale of block 7 for $3,850, an order confirming that sale being entered on the same date. Any action taken by the executrix in the matter of disposing of lots 5 and 6, block 6, under the order of the probate court of August 27, 1957, is not controlling on the disposition of this appeal.

There must be a new trial, and the cause on appeal must be tried on the merits precisely as if commenced in the district court. The appellant is entitled to a complete trial de novo without reference to what occurred in the probate court.

Reversed and remanded.

---

Estate of Roberts, 202 Minn. 217, 277 N. W. 549; In re Estate of Leonard, 191 Minn. 388, 254 N. W. 594; In re Estate of Turner, 181 Minn. 528, 233 N. W. 305; Minneapolis Trust Co. v. Birkholz, 172 Minn. 231, 215 N. W. 223; Preston v. Batcheller, 162 Minn. 433, 203 N. W. 225; In re Estate of Slimmer, 141 Minn. 131, 169 N. W. 536; First Nat. Bank v. Towle, 118 Minn. 514, 137 N. W. 291; Strauch v. Uhler, 95 Minn. 304, 104 N. W. 535; Washburn v. Van Steenwyk, 32 Minn. 336, 20 N. W. 324; In re Estate of Rogers, 141 Minn. 93, 169 N. W. 477.